THE SHELDON HAT BLOCKING COMPANY, Appellant, *v.* THE EICKEMEYER HAT BLOCKING MACHINE COMPANY et al., Respondents.

The doctrine of equitable estoppel, which prevents a principal from questioning an act of his agent done in his business, but not within the scope of the agent's authority, where the principal has not disaffirmed the act within a reasonable time after it came to his knowledge, applies to members of a corporate body as well as to persons acting in a private capacity.

Where, therefore, the trustees of a manufacturing corporation in good faith assigned and transferred all of its property in settlement of a judgment against the corporation, the value of the property not being more than the amount of the judgment, and the corporation having no other means with which to pay the same, and where all of the stockholders had knowledge of the transfer at or about the time it was made, and for four years took no steps to impeach or question the same, *held*, that an action was not maintainable thereafter to set aside the transfer, either by the corporation or its stockholders, even conceding the trustees had no power to make it.

*It seems* that this would be so if the transferee had knowledge at the time of the transfer that the action of the trustees was *ultra vires*.

*It seems*, also, that the provision of the Revised Statutes (1 R. S. 603, § 4) prohibiting a corporation which has refused payment of its obligations in money from transferring any of its property in payment of a debt has no application to such an action, as it is not a creditor who seeks to impeach the transfer.

(Argued November 21, 1882; decided December 28, 1882.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order

made July 9, 1880, which affirmed an order in favor of defendants, entered upon a decision of the court on trial at Special Term.

This action was brought to set aside a transfer of certain property, and property rights made by plaintiff's board of trustees to defendant, The Eickemeyer Hat Blocking Machine Company, and for an accounting.

The plaintiff is a corporation duly organized under the laws of the State of New York, and its object, as stated in its articles of association, " was, among other things, for the purpose of blocking and shaping fur and wool hats, and that a part of its business was in manufacturing and licensing machines for stretching and blocking hats." The defendant was also engaged in the same general business under patents of the United States owned by it. In the year 1870 the defendant commenced an action in the Federal court against the plaintiff, charging it with infringing its patents for stretching the brims and tips of hats. This action resulted in a decree made on or about January 31, 1873, by which it was adjudged that the plaintiff's process was an infringement upon the defendant's patents for stretching hats, and a perpetual injunction was issued thereupon against the plaintiff and certain persons, its licensees, who were joined as defendants. By the decree it was referred to a master to take an account of the profits which the plaintiff had made from the said infringing machine, and all the damages which the said defendant had sustained by reason of such infringement, and on or about April 16, 1873, the master reported the profits made by the plaintiff to be $7,000 and upwards, and the damages sustained by the defendant to be $91,000 and upwards. Pending the reference before the master the officers of the plaintiff, becoming apprehensive of the result of the reference, made overtures on its behalf to the defendant corporation for some arrangement or adjustment of the controversy, but no settlement or arrangement could be effected which involved the plaintiff's right in any way to use the defendant's process. The officers of the plaintiff were advised that the only course open to them, in so far as the

further contest was concerned, was to give security which would be in double the amount reported by the master, and appeal from the judgment. It is found by the court as a fact that the plaintiff was unable to furnish the security to appeal to the Supreme Court of the United States, and had no property except its patents and some machines for blocking and stretching hats, which were in the hands of its licensees, and no money except a few thousand dollars due from such licensees. That by reason of the result of said suits in the Circuit Court of the United States the further prosecution of the plaintiff's business was rendered hopeless, unless some arrangement could be made with the defendant whereby the right to use its patents might in some way be secured. That Archibald T. Finn, one of the defendants, as president of the plaintiff, proceeded to negotiate with the defendant, the Eickemeyer Company, for a settlement of said profits and damages recoverable under the said decree of the United States court against the plaintiff, and failing to secure other terms, finally offered to convey to the defendant all the letters-patent for blocking and stretching hats belonging to the plaintiff, whether standing in its own name or in the name of others, and outstanding licenses granted by the plaintiff for the use of machines made pursuant to said letters-patent, in satisfaction of the claim of the defendant for the profits and damages they were entitled to recover pursuant to the decree of said United States court under the report of said master, which proposition was accepted by the defendant. And in pursuance thereof assignments of said patents and an assignment of outstanding licenses and agreements made by and between the plaintiff and its licensees were executed and delivered to the defendant and a release of the profits and damages awarded to the defendant was executed and delivered to the plaintiff. That by the terms of the settlement the defendant was to collect the sums due the plaintiff from licensees prior to the 1st day of April, 1873, and pay the same over to the plaintiff, which it subsequently did, amounting to about the sum of $8,000. That by the plaintiff's certificate of incorporation the number of trustees

of the plaintiff was fixed and limited at three, and that Archibald T. Finn, Julius Sheldon and Charles Atwood, Jr., were named in said certificate as the first board of trustees of said plaintiff, and have ever since continued to be the only trustees of the plaintiff. That Finn was the president of said corporation, and that the business and affairs of said plaintiff were entirely managed and conducted by said Finn, Atwood and Sheldon. That on April 10, 1873, it was well known to said three trustees, and to a considerable number of the stockholders, of the plaintiff, that large damages would be awarded by the said master in his report to be made in favor of the defendant and against the plaintiff. That on April 10, 1873, a meeting of the board of trustees of the plaintiff was held, at which Finn and Atwood attended, and of which Sheldon had notice, and that at said meeting a resolution was passed reciting that the suit had been decided against the company by which the company had been made liable for a large amount of damages which was then in course of being ascertained, and when ascertained would have to be paid, and that the company had no means of paying such damages except by the sale of its property and effects. The president was authorized to negotiate and conclude a settlement, and for that purpose was "authorized on behalf of the company to make and enter into any consent, confession, stipulation and agreement in respect to such damages and the amount thereof; and that in order to pay said damages and costs the whole or so much as may be necessary of the property, patents, patent rights, assets, effects, rights and interests belonging to and appertaining to this company legally and equitably, be sold, assigned and transferred. That the president be, and he is hereby authorized to sell, assign and transfer the same or any of them, or any part of any of them, for the best price he can obtain for the same, and make, execute, acknowledge, prove and deliver all deeds, assignments, transfers and other instruments in writing necessary and proper in the premises, and to affix the seal of this corporation thereto, and sign his name thereto as president." It was under the authority of this resolution that the president acted in

assigning to the defendant the patents and property of the plaintiff. That several of the stockholders of the plaintiff were informed of said proposed arrangements before the agreement was executed, and that all the stockholders of the plaintiff, at or about the time of the transfer of said patents and licenses, were informed of the fact of its having been made, but up to the time of the commencement of the action in the year 1877 took no steps to impeach the same, and since such time said plaintiff ceased to do business and has never resumed its business in any way.

*George Ticknor Curtis* for appellant. The act of the two trustees, Finn and Atwood, in voting to sell and transfer all the property of the Sheldon Company, and thus rendering it practically impossible for it to continue the business for which it was incorporated, and inflicting upon it virtual political death, was *ultra vires*. (*Abbott* v. *Hard Rubber Co.*, 33 Barb. 578; *Partridge* v. *Badger*, 25 id. 146; *Moss* v. *Lead Mining Co.*, 5 Hill, 137; *Copeland* v. *Citizens' Gaslight Co.*, 61 Barb. 60; *Gray* v. *N. Y. & V. Steamship Co.*, 3 Hun, 383; *Smith* v. *N. Y. C. Stage Co.*, 18 Abb. Pr. 419; *Frothingham* v. *Barney*, 6 Hun, 366; *Taylor* v. *Earle*, 8 id. 3; *Rollins* v. *Clay*, 33 Me. 132; *Beaston* v. *Farmers' Bank*, 12 Peters, 102, 103.) The transfer of the Sheldon Company's property by Finn was a fraud in law upon its stockholders, of which the Eickemeyer Company had or was bound to take notice. (*Dabney* v. *Stevens*, 10 Abb. [N. S.] 39; *Westerfield* v. *Radde*, 6 Daly, . ; *Risley* v. *Ind. R. R. Co.*, 1 Hun, 205; *Garrison* v. *Howes*, 17 N. Y. 458; *Boughton* v. *Otis*, 21 id. 261; *S. & H. Quarry Co.* v. *Bliss*, 27 id. 297; *Jones* v. *Barlow*, 62 id. 205; *Wilds* v. *Suydam*, 64 id. 173, 177.) Directors of a corporation are the trustees of the stockholders, and the same rules are applied to them as to other parties in the fiduciary relations of trustee and *cestui que trust*. (Perry on Trusts, 207; Green's Brice's Ultra Vires, 400, 408, 409; 56 N. Y. 492; Field on Corporations, 1877, p. 189, note 3.) The transfer, being made in contemplation of insol-

vency, is utterly and *ab initio* void. (*Smith* v. *Consolidated Stage Co.*, 18 Abb. Pr. 419; *Bowen* v. *Lease*, 5 Hill, 221; *Sibbel* v. *Remsen*, 33 N. Y. 95; *Loring* v. *U. S. Vulcanized Co.*, 36 Barb. 329; *Harris* v. *Thompson*, 15 id. 62; *Robinson* v. *Bank of Attica*, 21 N. Y. 406; *Browne* v. *Harbeck*, 9 id. 589; *Dutcher* v. *Imp. and Traders' Bank*, 59 id. 5; *Herrick* v. *Borst*, 4 Hill, 650; *Walkenshaw* v. *Perzel*, 32 How. 233.) Where a party, seeking to set up an equitable estoppel, has determined upon his action, independently of the act or negligence of the party whom he seeks to estop, the doctrine does not apply. (*Eldred* v. *Hazlett's Admr.*, 33 Penn. St. 307; Story's Eq., § 1543.) Where a party, seeking to set up an equitable estoppel, has knowledge of all the circumstances upon which the rights of the party whom he seeks to estop depend, the doctrine is also inapplicable. (Story's Eq., § 1543; *Whitney* v. *Holmes*, 15 Mass. 152; *Baldwin* v. *Richman*, 1 Zabr. 398; *Liverpool Wharf* v. *Prescott*, 7 Allen, 494; Bigelow on Estoppels, 467, 470; *B. & W. R. R. Co.* v. *Sparhawk*, 5 Metc. 469.) The doctrine of equitable estoppel cannot be taken advantage of by a party who has been guilty of any fraud, constructive or actual, in obtaining the title which he seeks to support by an estoppel. (Bigelow on Estoppels [2d ed.], 450, note 2; *Wilcox* v. *Howell*, 44 N. Y. 398.)

*Luther R. Marsh* for respondents.

TRACY, J. The trial court having found that the settlement made between plaintiff and defendant " was not the offspring of fraud," but was made by the trustees of the plaintiff and the defendant in good faith, that the value of the property transferred was not greater than the claim of the indebtedness of the plaintiff to the defendant, and the judgment having been affirmed at General Term, the only ground upon which it can be attacked in this court is that the trustees had no power or authority to make such settlement and transfer of its property. It is upon this ground that the learned counsel for the plaintiff assails the judgment. He insists that the act of the trustees in

voting to sell and transfer all the property of the Sheldon Company, and thus rendering it practically impossible for it to continue the business for which it was incorporated, and inflicting upon it virtual political death was *ultra vires.* Conceding, without deciding this position to be well taken, we are, nevertheless, of the opinion that this judgment must be affirmed. The act was not illegal. In transferring the property of the corporation to pay its debt the trustees believed that they were acting within the scope of their authority, and the defendant accepted the transfer and received the property in satisfaction of its claim against the plaintiff, in the honest belief that it thereby acquired good title thereto. If the trustees had no power, as the agents of the corporation, to transfer all its property, thus depriving it of the means of carrying on the business for which it was organized, it is but the case of an agent making a contract in excess of his authority. The act is voidable, not void. The principal may, nevertheless, affirm the act, and a ratification is equivalent to a prior authorization. If all the stockholders of this corporation had, with full knowledge, subsequently ratified the transfer and affirmed the settlement, the act — though beyond the power given the trustees by the charter — could not be subsequently avoided by the stockholders, or by the corporation. This case falls within the rule established by this court in the case of *Kent* v. *The Quicksilver Mining Company* (78 N. Y. 159).

It was there held that the acts of a corporation which are not *per se* illegal, or *malum prohibitum,* but which are *ultra vires,* affecting, however, only the interests of the stockholders, may be made good by the assent of the stockholders, so that strangers to them, dealing in good faith with the corporation, will be protected in a reliance on these acts. That it is not needed in such a case that there be an express assent on the part of the stockholders to work an equitable estoppel upon them. When they neglect to promptly and actively condemn the unauthorized act, and to seek judicial redress after knowledge of the committal of it, this will be deemed an acquiescence in it, and if innocent third persons have been led thereby to

put themselves in a position from which they cannot be taken, without loss, if the act were held invalid, the stockholders will be estopped from questioning it.

We think, upon the facts found in this case, supplemented by supporting facts proven but not found, the stockholders of this corporation must be deemed to have assented to and ratified the settlement made by their trustees. They knew that the settlement had been made. They knew that all the property of the company had been transferred to make such settlement. They knew that the corporation, in consequence thereof, had been compelled to suspend business. They knew that the Eickemeyer Company had received their property in settlement of a claim against the corporation of which they were the stockholders, and had executed a release of such claim. They knew that, relying upon the validity of such settlement, the Eickemeyer Company had undertaken to collect the licenses due to their corporation from its licensees prior to such settlement, and to pay the same over to their president, and that such collections had been made and paid over to the extent of about $8,000 ; and it must be assumed that they knew that the Eickemeyer Company would use the patents transferred to it in the further prosecution of its business, and would earn profits from such use, and would conduct its business and grant licenses to its licensees upon the faith that it was the owner of such patents, and yet, for four years, they did nothing to question or repudiate the settlement made in their behalf. Had an individual acting in his natural capacity thus slumbered upon his rights, violated by an agent who had exceeded his authority, no one can doubt but that his long acquiescence would have amounted to a ratification. The rule is well settled that a principal, on being informed of the act which his agent has assumed to do in his interest, is bound to affirm or disaffirm within a reasonable time. The doctrine of equitable estoppel applies to members of corporate or associate bodies as well as to persons acting in a natural capacity. (2 Story's Eq. Jur., § 1539.)

The learned counsel for the appellant seeks to avoid the

force of this equitable estoppel by alleging that it was neither pleaded by the defendant in his answer nor found as a fact by the referee. The court finds that the settlement and transfer were made in good faith and without fraud, and finds, for four years and three months and up to the time of the commencement of this action in the year 1877, the stockholders of the company, although they knew of the transfer and settlement, took no steps to impeach the same, and since the day of settlement the defendant has been engaged in the business of granting licenses for both stretching and blocking hats under the letters patent assigned to it by the president of the plaintiff, and has received royalties from nearly all the machines formerly owned by the plaintiff and transferred to it. To these findings of fact there is no exception, and as a conclusion of law the court finds and determines that the plaintiff is not entitled to maintain its action. These facts we think sufficient to constitute an equitable estoppel within the rule of the *Quicksilver Case*, and having been proved and found by the referee, without exception, it is unnecessary to discuss whether the estoppel set up by the defendant is a legal or an equitable one. It is urged that the doctrine of equitable estoppel cannot be relied upon to defeat this action, for the reason that the defendant in this case had full knowledge of all the facts upon which the rights of the party it seeks to estop depend. But the sufficient answer is that there is no finding by the court that the officers of the defendant conducting the settlement had knowledge of facts which made the transfer invalid. So far as their knowledge is disclosed by the facts found, it is limited to the fact that the plaintiff had, in the prosecution of its business, infringed a patent owned by the defendant, had been prosecuted for such infringement, a recovery had been had to the extent of about $99,000, and the actions were settled by a transfer of the infringing patent and all the other patents owned by the plaintiff to the defendant. The counsel should at least have requested the court to find that the officers of the defendant corporation had knowledge of the further facts now relied upon to estab-

lish the invalidity of the transfer. No such fact is found, and no request was made so to find. But assuming that the officers of the defendant had known that the acts of the trustees of the plaintiff were *ultra vires*, it is well settled that such long acquiescence amounts to an equitable estoppel and will validate an invalid agreement. As "where power was given by the deed of settlement at a meeting of two-thirds in number and value of the shareholders to borrow money on debentures, and the directors borrowed money on debentures upon the resolution of a meeting at which the requisite number did not attend, and the debentures were issued to persons present at the meeting and the money applied in payment of the debts of the company and interest paid on the loans for two years, it was held that the original issue of debentures was invalid, but that it was cured by the subsequent acquiescence of the company." (Story's Eq. Jur., § 1539; *Magdalena Steam Navigation Company, in re,* 6 Jur. [N. S.] 975; *The Quicksilver Case, supra.*)

In *Smallcombe's Case* (L. R., 3 Eq. Cas. 769), Lord ROMILY, master of the rolls, declares that lapse of time and acquiescence on the part of the party whose interests are alleged to have been injuriously affected by irregular proceedings will be a complete bar unless the transaction is tainted with fraud, involving grave moral guilt. Upon this ground an agreement between the shareholders and directors of a joint-stock company was upheld, although admitted to have been originally *ultra vires*, and although the books of the company, accessible to the shareholders, did not show the real nature of the transaction. This case was affirmed in the House of Lords (L. R., 3 H. L. 249; see, also, *Brotherhood's Case,* 31 Beav. 365), and in cases of actual fraud the courts of equity feel great reluctance to interfere where the party complaining does not apply for redress at the earliest convenient moment after the actual character of the fraudulent transaction comes to his knowledge.

The party upon whose rights or interests a fraud is committed should not be allowed, after the fact comes to his

knowledge, to speculate upon the possible advantages to himself of confirming or repudiating the transaction. He must repudiate at once and surrender his securities. (Story's Eq. Jur., § 1539 *a; Parks* v. *Evansville, etc., R. R. Co.,* 23 Ind. 567; see, also, *Perrett's Case,* L. R., 15 Eq. Cas. 250.)

Had the officers of the defendant known that the trustees of the plaintiff were acting without first obtaining the consent of its stockholders, and that the effect of such settlement and transfer would be to put an end to the existence of the corporation, they would then have known nothing more than that the trustees were exercising a doubtful authority; one which could certainly be made valid by subsequent ratification, and the validity of which would be rendered doubtful only in case the stockholders disaffirmed the settlement and took proceedings to set it aside. Such settlement must, from its consequences, have been immediately known to them, and the defendant had a right to assume, from the long acquiescence which followed, that the stockholders had affirmed and ratified the same.

The plaintiff was bound to assume that the defendant would use, in the further prosecution of its business, the property which had cost it nearly $100,000, and that one of the methods of putting the patents to profitable employment would be the granting to others the right to use machines made in accordance with them; and the referee finds that such contracts were made.

To allow the plaintiff or its stockholders to lie by for more than four years, thus inducing the defendant to take no steps to enforce the payment of its recovery against the plaintiff, and permitting it to use this property as its own, in the belief that it had acquired an unimpeachable title thereto, and make contracts whereby it incurred obligations to others, and then to come in and take to themselves the profits resulting from the defendant's management, without paying or offering to pay the amount recovered by the defendant, would work a gross wrong and injustice; for it must be borne in mind that, if the transfer from the plaintiff to the defendant be set aside, the latter must

not only account for the profits, but would be liable upon contracts which it had made with third parties for the use of these patents.

The fact that Finn, the president of the plaintiff, was also joined as a defendant in the infringing suit, and that the recovery went against him personally as well as against his company, we do not think necessarily disqualified him from acting on behalf of the corporation, or constituted a settlement thus made a fraud in law upon the stockholders of his company. Connected with the charge of his having made a fraudulent settlement with the defendant, one of the alleged motives being to escape this personal liability, it was no doubt a most material circumstance to be considered; but the charge of fraud having been disproved, and the court having found that the settlement was made in good faith, the fact becomes immaterial.

Nor can the transfer or settlement be declared void as being in violation of section 4, title 4, chapter 18 of part 1 of the Revised Statutes. No creditor, or person representing a creditor, seeks to impeach such transfer. If the section has any application to this case there are no findings, or requests to find, which can raise the question.

The judgment should be affirmed, with costs.

All concur, except RAPALLO, J., absent.

Judgment affirmed.