Rabe v. Dunlap.

---

RUDOLPH F. RABE and MICHAEL C. CROSS

*v.*

ROBERT DUNLAP et al.

1. Stockholders of a corporation have a right to have the property of the corporation applied and used exclusively for the purposes specified in its charter, and any attempt by its managers to appropriate it to any other purpose is a violation of the rights of the stockholders.

2. A corporation created by statute can exercise no power and has no rights except such as are granted by express words or fair implication.

3. In the construction of such grants the rule, however, is to hold that what is fairly implied is as much granted as what is clearly expressed.

4. A corporation holds its property as the trustee of its stockholders, and they, like any other *cestui que trust*, have a right to have the trust property honestly managed and preserved from waste and misappropriation.

Rabe v. Dunlap.

5. Equity discourages laches and neglect, and requires those who seek its aid to act in good faith and with reasonable diligence.

6. A stockholder who applies to a court of equity for its summary interference to protect his stock against the consequences of an act not prohibited by law, but in excess of the power of the corporation, to be entitled to what he asks, must apply promptly; he cannot wait to speculate upon the chances, but he must come before the act of which he complains has become the foundation of rights or equities which must be overthrown to extend relief to him.

7. Summary relief will not be extended to a suitor whose conduct, before he asks for relief, has been such as to prevent equity being done.

On application for an injunction, heard on bill and affidavits and affidavits on the part of the defendants.

*Mr. Edward Q. Keasbey* and *Mr. Anthony Q. Keasbey*, for the complainants.

*Mr. Mahlon Pitney* and *Mr. John R. Emery*, for the defendants.

VAN FLEET, V. C.

This is an application for an injunction. The application is resisted on the ground that the complainants have, by their laches, lost all right to either temporary or permanent relief, the contention being that they are not entitled to an injunction now, nor can any relief be given to them on final hearing. The only question, however, before the court at this time is, whether or not an injunction should issue. The facts to be considered in deciding this question are almost entirely free from dispute.

The particular property which the complainants ask to have protected is shares of stock issued to them by the Lake Hopatcong Land and Improvement Company, a corporation organized under the laws of this state, in August, 1885, with a capital of $50,000, divided into five hundred shares of $100 each. Only two hundred and forty-nine of the five hundred shares appear to have been issued, and of these one of the complainants holds five shares and the other six. The principal purposes for which the corporation was organized were to buy and sell land and erect buildings on and about Lake Hopatcong. Some of the persons

Rabe v. Dunlap.

interested in this corporation organized three others—one on the 15th day of January, 1886, called the Lake Hopatcong Hotel Company, the purposes of which were to buy land and erect hotels, cottages and other appropriate structures thereon, and to carry on the business of an inn-keeper; another on the 29th day of June, 1886, called the Lake Hopatcong Transportation and Steamboat Company, the purpose of which was to carry on the business of transporting passengers and merchandise for hire; and the third on the 14th day of March, 1887, called the Hotel Breslin Villa Company, the purposes of which were to buy land and erect hotels and other buildings thereon and lease and sell the same. On the 17th day of April, 1888, a statute was passed making it lawful for two or more corporations organized under the general laws of this state, and formed " for all or any of the following purposes: the improvement and sale of lands, the construction, maintenance and operation of hotels and carrying on the business of an inn-keeper, and the transportation of merchandise and passengers upon land and water," to consolidate and merge their corporate rights, franchises, powers and privileges into a single corporation, so that all the property, rights, franchises and privileges by law vested in the several corporations, should, by the consolidation, be transferred to and vested in the corporation created by the consolidation. *P. L. of 1888 p. 441.* This statute took effect immediately. It prescribes with particularity the " conditions and restrictions" to be performed and observed in consolidating two or more corporations. For the purposes of this discussion, it is unnecessary to state what these conditions and restrictions are further than to say, that no consolidation can be made until all of the corporations proposing to consolidate have entered into an agreement, under their corporate seals, prescribing the terms and conditions of the consolidation and the mode of carrying the same into effect, nor until the agreement so made has been submitted to the stockholders of each of the corporations, separately, at a meeting called for that purpose, and has been sanctioned and approved by a majority of the shares present at such meeting.

Almost immediately after the enactment of this statute, the

four corporations just described consolidated under its authority. The corporation so created is called the Breslin Hotel and Land Company.   The agreement to consolidate was made by the four corporations on the 4th day of May, 1888, and was sanctioned and approved by their respective stockholders, in the manner prescribed by the statute, at a meeting held on the 31st day of the same month.   Of the two hundred and forty-nine shares issued by the corporation in which the complainants held stock, one hundred and eighty-four were represented at the meeting of the stockholders of that corporation and voted in favor of consolidation.   The complainants did not attend the meeting, nor was their stock represented there, though it is admitted that they had notice of the meeting and its object, and also knew that a committee, appointed by the four corporations to consider the expediency of amalgamation, had made a report as early as February, 1888, in favor of consolidation.   It is undisputed that the consolidation agreement conforms, in all respects, to the requirements of the statute, and, also, that every act which the statute requires to be done in order to make such an agreement valid and effectual, was done in this case.   The agreement, together with the sanction and approval of the stockholders, was filed in the office of the secretary of state on the 13th day of September, 1888.   By force of the statute, such filing made the consolidation complete, and transformed the four distinct corporate entities into one.   The property of the four corporations was thereupon conveyed to the new corporation, the Breslin Hotel and Land Company.   The consolidation agreement provided that the stockholders of the corporation in which the complainants held stock should have the right to exchange their stock, share for share, for the preferred stock of the new corporation.   Such preferred stock entitled its holder to a preferential dividend of six per cent. annually.   The complainants were notified, by a written notice, that they had a right to exchange their stock for preferred stock of the new corporation, and also that a stockholders' meeting, for the election of directors of the new corporation, would be held in Hoboken on the 10th day of October, 1888.   They paid no attention to the notice.   The

new corporation was; on the day appointed, organized and proceeded at once to make contracts and incur obligations and to carry on the various enterprises and ventures which the four corporations had previously conducted separately. Between the 10th day of October, 1888, and the 21st day of October, 1889, the defendant Robert Dunlap loaned and advanced to the new corporation over $22,000. He also, on the 25th day of November, 1889, endorsed, for its accommodation, a note for $10,000, and another of the same amount on the 13th day of December, 1889, both of which he has since been compelled to pay. To secure Mr. Dunlap for what was due to him for moneys loaned and advanced, and also to protect him against the liability he had incurred in endorsing the two notes, the new corporation executed four mortgages to him on the 27th day of December, 1889, two on its real estate and the other two on its chattels. Some of the land so conveyed in pledge is land which, prior to the consolidation, belonged to the corporation in which the complainants hold stock, and which, after the consolidation, was conveyed to the new corporation in performance of the consolidation agreement. On the date when these mortgages were executed, it is not disputed that there was over $24,000 due to Mr. Dunlap for loans and advances to the new corporation; nor is it disputed that there is now a further sum of over $18,000 due to him for money paid for the new corporation in discharging the liability he incurred in endorsing the two notes. In March, 1892, a suit was brought in this court by Mr. Dunlap to foreclose his mortgages. No defence was made. A decree *pro confesso* has been entered and a reference ordered, and the case, in respect to the matters referred, is now pending before the master. After the order of reference was made, one of the complainants in this suit was allowed to intervene in that, with the right to make any defence which either of the defendants could have made.

It is at this point in the history of the new corporation that the complainants, for the first time, ask for judicial protection of their rights, and the relief they now seek is of the most destructive kind to every right and interest standing opposed

to their interests.   They ask to have the new corporation ripped up from bottom to top, and that everything which it has done, affecting their rights, may be undone.   Stated in detail, what they ask is this—that the new corporation may be declared to have been void from the beginning; that the deed by which the property of the corporation in which they are interested was conveyed to the new corporation, may be declared to be a nullity, and that the property conveyed by it may be restored to the grantor or to a trustee to be appointed for that purpose; that the new corporation may be required to account for all property of their corporation which it has disposed of; that the mortgages of the defendant may be decreed to be no lien on the land which their corporation conveyed to the new corporation, and that he may, in addition, be commanded and required to execute a release, releasing such land from the operation of his mortgages; and that in the meantime, and as preliminary to the principal relief sought, the further prosecution of his foreclosure suit in this court may be stayed or restrained.

That the conveyance by the complainants' corporation of all of its property to the new corporation, for the purpose of appropriating it to new and different purposes from those for which the grantor corporation held it, was without power or right and a plain misappropriation of the property, as against non-assenting stockholders, is a proposition that was not disputed on the argument.   It cannot be; it is incontestable.   The stockholders of a corporation have an indisputable right to have the property of the corporation applied and used exclusively for the purposes specified in its charter, and any attempt by its managers to appropriate it to any other purpose is a usurpation of power and a violation of the rights of the stockholders.   No rule of law is better settled than that which declares, that a corporation created by statute, either special or general, can exercise no power and has no rights except such as are granted by express words or fair implication.   And in the construction of such grants the rule is well settled that it must be held that what is fairly implied is as much granted as what is clearly expressed.   By the charter of the complainants' corporation its managers are given no power

whatever to carry on the business of an inn-keeper or that of a common carrier, or to embark the property of the corporation in such or like enterprises. They are radically different from and wholly foreign to the purposes specified in its charter. The complainants were not deprived of their stock or any of their rights by the statute of 1888. It is beyond the power of the legislature to take away or destroy a vested right. Private property may be taken for public use on just compensation, but the use here was in no sense a public use. The only effect which can, in my judgment, be given to this statute in this case, is to hold that it made the new corporation a valid corporation as to those who should deal with it, and as against assenting stockholders, but it left the rights of non-assenting stockholders in full vigor and unimpaired. There can be no doubt, therefore, that had the complainants applied for an injunction promptly, and while it was in the power of the court to extend protection to them, without doing wrong or injustice to others, it would have been granted. A corporation holds its property as the trustee of its stockholders, and they, like any other *cestui que trust,* have a right to have the trust property judiciously and honestly managed and preserved from waste and misappropriation.

But stockholders, to be entitled to the summary interference of the court in cases where they seek protection against acts which are merely in excess of the power of the corporation, and are not prohibited by law, must be diligent; they must apply so recently after the doing of the act of which they complain that the court may stop or undo the wrong to them without doing equal or greater wrong to some other person. The principle which must control the action of a court of equity, in cases where the defence is laches, was laid down by Lord Camden, many years ago, in these words: "Nothing can call forth the activity of a court of equity but conscience, good faith and reasonable diligence. Where these are wanting the court is passive and does nothing. Laches and neglect are always discountenanced, and therefore from the beginning of this jurisdiction there was always a limitation to suits in equity." *Smith* v. *Clay,* reported in a note to *Deloraine* v. *Brown, 3 Bro. C. C. 639*

(*Amb. 645*). This principle, as it is applied to stockholders who are tardy in seeking protection against acts *ultra vires* of the corporation, was expressed by Sir John Romilly, master of the rolls, in *Gregory* v. *Patchett, 33 Beav. 595, 602*, in this form: "Shareholders cannot lie by, sanctioning, or by their silence at least acquiescing in an arrangement which is *ultra vires* of the company to which they belong, watching the result; if it be favorable and profitable to themselves to abide by it and insist on its validity; but if. it prove unfavorable and disastrous then to institute proceedings to set it aside." And Lord-Justice Turner's statement of the rule is equally pertinent to the case in hand. In *Great Western Ry. Co.* v. *Oxford, Worcester and Wolverhampton Ry. Co., 3 De G., M. & G. 341, 359,* he said: "Where the summary interference of this court is invoked, in cases of this nature, it must be invoked promptly. Parties who have lain by and permitted a large expenditure to be made, in contravention of the rights for which they contend, cannot call upon the court for its summary interference. The jurisdiction to interfere is purely equitable, and it must be governed by equitable principles. One of the first of those principles is that parties coming into equity must do equity; and this principle more than reaches to cases of this description. If parties cannot come into equity without submitting to do equity, *a fortiori* they cannot come for the summary interference of the court when their conduct, before coming, has been such as to prevent equity being done." The cases in which this principle, as it is applied to stockholders, has been discussed, are numerous. The doctrine they establish is, that where an act is done openly, and especially on notice, and without evil intent, though clearly in excess of the power of the corporation, a non-assenting stockholder will not be allowed to pause to speculate upon the chances—to wait until he can see whether such act is likely to result in profit or loss—but to be entitled to the summary interference of the court he must ask for it promptly, and before the act of which he complains has become the foundation of rights or equities which must be destroyed or greatly impaired if the act be nullified or undone. Or, stated with greater brevity, and in its simple

essence, the rule is this: If he wants protection against the consequences of an *ultra vires* act he must ask for it with sufficient promptness to enable the court to do justice to him without doing injustice to others. *Kent* v. *Quicksilver Mining Co., 78 N. Y. 159; Sheldon Hat Blocking Co.* v. *Eickemeyer Hat Blocking Co., 90 N. Y. 607; Watts's Appeal, 78 Pa. St. 370; Kitchen* v. *St. Louis, Kansas City and Northern R. R. Co., 69 Mo. 224; Taylor* v. *South and North Alabama R. R. Co., 4 Wood (U. S.) 575; Graham* v. *Birkenhead, Lancashire and Cheshire Junction R. R. Co., 2 Man. & G. 146.*

This principle must control the decision of the present application. No argument is required to show its pertinency. When the leading facts of the case are recalled it applies itself. Whether the complainants remained inactive to speculate upon the chances, intending to abide by the consolidation if it resulted in benefit, and, if not, to try to undo it, it is manifest that they acted precisely as they would have done if such had been their intention. Although they were fully informed of each step in the consolidation scheme from its inception to its completion, and also of the fact that the new corporation had been organized and was actively engaged in the prosecution of the several enterprises which had previously been carried on by the four corporations separately, yet, for over three years, they remained passive and inactive and did nothing, and it is not until the new corporation has become insolvent, and all of its property is about to be sold to pay mortgages, which were made and accepted while they were apparently assenting to the amalgamation and all its consequences, that they seek to have the consolidation broken up and the property of the corporation in which they are interested restored to it. They laid by until the new venture proved disastrous, and then, for the first time, they ask the court to undo what for over three years they had, by their inaction and delay, been apparently assenting to. Acquiescence or tacit assent, in such cases, was defined by Judge Folger in *Kent* v. *Quicksilver Mining Co., supra,* to mean neglect to promptly and actively condemn the unauthorized act by suit. More than a year elapsed between the formation of the new corporation and

the execution of the four mortgages to the defendant. If the validity of the new corporation had been promptly challenged by suit, it is almost absolutely certain that the debts secured by those mortgages would not have been contracted. Neither the mortgages nor the debts would have then existed. As it is, those mortgages are unquestionably good and valid as against the assenting stockholders. It is probable that two hundred and thirty-seven out of the two hundred and forty-nine shares have assented. It is certain that one hundred and eighty-four have. In this situation of affairs, it is obvious, to arrest the defendant's foreclosure suit will prevent him, at least for the present, from enforcing that part of his security which is good beyond question, and this must be done, if done at all, to protect the complainants in the enjoyment of a right, small in both extent and value compared with that of the defendant, and which it is not at all certain they have not irretrievably lost by their laches. The complainants, in my judgment, occupy the position described by Lord-Justice Turner when he said: "Suitors cannot come for the summary interference of the court when their conduct, before coming, has been such as to prevent equity being done."

The complainants' application will be denied, with costs.