---

(41 App. Div. 113.)

## DU BOIS v. SHEPPARD et al.

(Supreme Court, Appellate Division, Fourth Department. May, 1899.)

1. CORPORATIONS—SALES BY PRESIDENT—INNOCENT PURCHASERS.

A resolution authorizing the president of a corporation to convey real estate directed that the deed should be attested by the secretary, that the purchaser should assume a mortgage on the premises, and that the sale should be for cash. The purchaser, a nonresident, was without knowledge as to the form of the resolution or as to the real authority conferred on the president. With the deed was an affidavit of the president, certifying that it was in conformity to the resolutions, and it had the corporate seal thereon. The purchaser made a small cash payment, and the remainder was secured by short-time paper, which was promptly paid. There was no evidence on which fraud could be imputed to the purchaser. *Held*, that title vested in the purchaser on acceptance of the deed.

2. SAME—AVOIDANCE OF SALE BY PRESIDENT.

The deed of a corporation, executed by its president in excess of authority conferred by resolution authorizing the conveyance, in that deferred payments were accepted instead of cash, can only be avoided by refunding the money paid where there is no suggestion of knowledge on the part of the purchaser of defects in the conveyance.

3. SAME—PRIMA FACIE AUTHORITY OF PRESIDENT TO EXECUTE DEED.

The president of a realty company as such has the power prima facie to execute conveyances of corporate property.

4. SAME—ESTOPPEL AFTER AFFIRMATION OF ACT OF OFFICER.

A realty company, which has authorized its president to convey property on certain terms as to payment of the consideration, is estopped from impugning the transaction on the ground of excess of authority by the president in that particular, where it has confirmed his acts by acceptance and retention of the money.

5. SAME—RESCISSION OF SALE—EXCUSE.

The failure of a corporation to rescind a sale of property, consisting of both real and personal property, alleged to have been made in excess of the authority conferred on its president, is not excused by the fact that the personal property had been sold by judgment creditors of the corporation on execution, as the avails of the sale were credited on the judgment against it, and return of the purchase money could have been made to purchaser, and the real estate reconveyed to the grantor.

6. SAME—POWER TO MAKE SALE—RIGHTS OF CREDITORS.

A corporation having the power to make a fair sale of its property, even though on the verge of dissolution, the title passes to the grantee free from the claims of creditors.

Appeal from judgment on report of referee.

Action by Abel Du Bois against Bradley Sheppard and others. From a judgment for defendants, plaintiff appeals. Reversed.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, and SPRING, JJ.

Charles M. Williams, for appellant.

George F. Yeoman, for respondents.

SPRING, J. The Rochester Realty Company, a domestic corporation, owned an apartment house called "The Centropolis," with the furniture therein, in the city of Rochester, subject to a mortgage of $33,000. The company was in failing circumstances, and suits were pending against it. On the 18th day of January, 1896, the directors of the company held a meeting, and passed the following resolutions:

"Resolved, that the president of this company be, and he is hereby, authorized to sell the premises known as 'The Centropolis,' together with the furniture, fixtures, and other appurtenances, for the sum of $10,000, subject to the mortgage thereon for $33,000 and interest from November 1, 1895, which the grantee shall assume and agree to pay. Further resolved, upon payment of said sum the president of the company be, and he is hereby, authorized to sign and execute in the name of the company a deed of said premises, and attach the seal of the company thereto, and that the secretary attest the same; such deed to contain a clause by which the grantee shall assume and agree to pay said mortgage and interest."

In attempted performance of the authority in him vested by these resolutions, the president of the company on that day conveyed and transferred to Jessie Du Bois the said real estate and furniture by a deed with a bill of sale therein, executed by said company, by him as such president, and acknowledged by him, with the corporate seal of the company attached. This deed was delivered to Miss Du Bois on that day. Judge Struble, the president of the company, was a friend of the Du Bois family, and had, to some extent, been their legal adviser; and he arranged at that time to take possession of the property for the Du Bois, as they resided in Pennsylvania, and did in fact do so. There was, on that day, therefore, an absolute delivery of possession of the real and personal property, by virtue of the conveyance and bill of sale. While Jessie Du Bois was the grantee named in the conveyance, yet the evidence unmistakably shows she was acting as the agent of her father, the plaintiff, and that the purchase price was paid by him; and on this day a deed from Miss Du Bois to her father was prepared, corresponding precisely with that by which the property in form was transferred to her, and this was subsequently acknowledged and delivered to plaintiff by her. On the 20th day of January, 1896, the defendant Bradley Sheppard recovered three judgments, aggregating over $6,000, against said realty company, and executions on that day were issued to the sher-

iff of said county, and a levy was made by him on the personal property in said apartment house, and the same was subsequently sold, in pursuance of the levy, against the protest of the plaintiff; and this action is brought under the transfer from the realty company to recover the value of the property claimed to have been converted by the sheriff's sale. The contention is that no title was acquired by the vendee, as Judge Struble exceeded his authority in executing and delivering such conveyance. The grounds urged are: (1) The conveyance is not attested by the secretary. (2) There is no assumption of the $33,000 mortgage, as provided in the resolution. (3) The purchase price was not paid in cash. While these objections are established by uncontroverted testimony, yet, from the view I take of the case, they do not invalidate the conveyance or transfer of the property. The plaintiff was in Pennsylvania at the time of the passage of the resolutions and the execution and delivery of the deed, and knew nothing of the manner in which they were brought about. The daughter, while in Penn Yan, where the occurrence took place, was equally without knowledge as to the form of the resolutions, or as to the real authority conferred upon the president. She accepted the deed of the realty company, with the corporate signature attached by the president, with his affidavit certifying it was in conformity to the resolutions of the board of directors of said company, and with the corporate seal thereon. There is not a shred of evidence upon which any fraud can be imputed to the plaintiff or his daughter, and the acceptance of the deed, executed as aforesaid, therefore vested the title in her. Mutual Life Ins. Co. v. Yates Co. Nat. Bank, 35 App. Div. 218, 54 N. Y. Supp. 743; Whitney v. Trust Co., 65 N. Y. 576.

In the consideration of the other objections we must assume the president exceeded his authority in failing to impose the payment of the prior lien as a personal obligation upon the grantee, and in omitting to require the purchase price to be paid in cash precedent to the delivery of the deed. Miss Du Bois paid $100 by check on the day of the delivery of the deed, and gave her note for $9,575, the residue of the purchase price, after deducting the paving tax against the premises, which she assumed and paid. This note was made to the order of Struble as president of the realty company, and was payable as follows: $1,000 in 10 days from date, $2,000 in 20 days from date, and the balance in 30 days after date. The note was paid on the 20th day of May thereafter, and the entire avails went to the credit of the realty company: that is, the grantee accepted the deed, paying $10,000 for the property described therein, and said sum was used by the grantor; and yet, after it has received and retained the full purchase price, it is now sought to avoid this conveyance and transfer, without disaffirming the contract, without refunding the moneys paid by Miss Du Bois, and without a suggestion of knowledge on her part of the defects in the conveyance which are the basis of the attack upon the transaction. The president, as such, possessed the power prima facie to execute the conveyance. Davies v. Steel Co., 6 App. Div. 166, 39 N. Y. Supp. 791; Rathbun v. Snow,.

123 N. Y. 343, 25 N. E. 379; Powers v. Power Co., 23 App. Div. 380, 48 N. Y. Supp. 237. The fact that he failed to comply with the resolution did not make the conveyance absolutely void; at best it was only voidable. Rogers v. Pell, 154 N. Y. 518, 49 N. E. 75.; Barr v. Railroad Co., 125 N. Y. 263–277, 26 N. E. 145; Thomas v. Railroad Co., 109 U. S. 522, 3 Sup. Ct. 315. Assuming Struble exceeded his authority, the realty company could have returned to the purchaser the money she paid, and demanded the return of the property sought to be transferred. This would have rescinded the transaction, and would have restored the parties to their original situation. The company could not, however, keep the consideration, and then nullify the conveyance. Therefore, laying aside any question of ratification by the company, there could not be any impeachment of plaintiff's ownership of the property without a rescission of the agreement by which she acquired the deed and bill of sale. The very essence of rescission is the restoration of the parties to their previous condition as nearly as may be, and that vital prerequisite has not been done with this purchaser. But the realty company is effectually estopped from impugning this transaction, as it confirmed the excess of authority of its president by its acceptance and retention of the money. Sheldon Hat-Blocking Co. v. Eickemeyer Hat-Blocking Mach. Co., 90 N. Y. 607; Kent v. Mining Co., 78 N. Y. 159; Buffalo Loan, Trust & Safe-Deposit Co. v. Medina Gas & Electric Light Co., 12 App. Div. 199, 42 N. Y. Supp. 781; Skinner v. Smith, 134 N. Y. 240. 31 N. E. 911; Seymour v. Association, 144 N. Y. 333, 39 N. E. 365. As was said in the case last cited, at page 341, 144 N. Y., and page 366, 39 N. E.:

"There were some alleged technical irregularities in the issue of the bonds. These represented the purchase price of the land, which the corporation bought and kept, and were its promise to pay, which it could not justly repudiate. That kind of plunder which holds onto the property, but pleads the doctrine of ultra vires against the obligation to pay for it, has no recognition or support in the law of this state."

The fact that the personal property was sold by the judgment creditor of the realty company cannot be urged as a reason for the failure of that corporation to rescind. The avails of the sale were credited on a judgment against it, and the return of the money to plaintiff could have been made, and the real estate reconveyed to the grantor. The grantee was not responsible for the intervention of judgment creditors of the company rendering an absolute restitution of the property impossible. Probably, however, there was no desire on the part of the stockholders of this moribund company to annul this transaction. Reconveyance to it would make the lands subject to judgment liens, and would be of no real utility to the company or to its stockholders.

The defending judgment creditor is in no better situation than the realty company. The plaintiff did nothing to deceive the said defendant. The debt of Sheppard was not created on the strength of any title remaining in the company after the conveyance to the daughter of the plaintiff. This judgment creditor could collect his judgment only from the property of the realty company. The cor-

poration had a legal right to make a fair sale of its property, even though on the verge of dissolution. It did that. The title passed to the grantee, and, of course, is not subject to the claims of the creditors of the company. In practical effect we have this astounding proposition on behalf of defendant: That because of some irregularity in the conveyance on the part of the grantor, after it has made a fair sale of its property, received the full purchase price, acquiesced completely in the transaction, its judgment creditors can strip the plaintiff of the property purchased, and still get their portion of the money plaintiff has paid to swell the assets of the company in purchasing the identical property sold by the sheriff. That doctrine is too unconscionable to be upheld. As I view the case, the fixing of the corporate seal is not of the utmost significance. However, the referee has practically determined, upon ample evidence justifying that conclusion, that the seal was attached prior to the delivery of the deed. The judgment should be reversed, and judgment ordered for the plaintiff for $900 and interest from October 29, 1897, besides the costs of this appeal and of the action.

Judgment reversed, and new trial ordered before another referee, with costs to appellant to abide event. All concur.