This is a bill for specific performance by Maurice M. Feder against a corporation known as the Forest Hill Apartments. The certificate of incorporation states that the objects for *Page 456 
which the corporation is formed are "to take, buy, purchase, and so forth, real estate * * * to transact a general real estate business, buying and selling and dealing in real estate." In other words, the business of the concern was the handling of real property.
It appears from the testimony that the company held an organization meeting in June, 1925, at which George B. Bergkamp was elected president. There were no other meetings either of the directors or the stockholders, no resolutions were ever passed and no by-laws were ever adopted. The affairs of the company thereafter were conducted as a result of informal conferences.
The company acquired a piece of property on Mt. Prospect avenue, Newark; the tract which is the subject of this suit. Mr. Bergkamp, the president, had a small office on or near the property and cared for the real estate for the company. The property appears to have been purchased with the idea of erecting thereon an apartment house, but, owing to zoning conditions, this idea was abandoned. An option was given for its sale, which option was to expire on November 25th, 1925, which is in evidence, signed by the president, who was called as a witness by the defendant, and who testified regarding it substantially as follows: That the stock was held by two groups, he and his son held fifty per cent. and Mr. Kellar, Mr. Blank and two others the remaining fifty per cent. That these gentlemen met and discussed the sale and agreed to the option saying, if the Kellar group got a profit of $10,000 they were satisfied; and that subsequently Blank was informed of the option, was satisfied with it and approved of a sale thereunder. This is the testimony of the defendant's own witness. Mr. Blank, another of defendant's witnesses, denies that he, representing his group of stockholders, knew anything at all about this option or the agreement of sale which developed from it. Thereafter, on the day the option was to expire, November 25th, a meeting was held in the office of Cyrus W. Vail, and an agreement of sale was prepared and signed by complainant, Feder, and by Forest Hill Apartments, George B. Bergkamp, president. For a seal it has the letters "L.S.." surrounded by a ring. *Page 457 
It was recorded. Complainant sues on it; defendant refuses to perform. The defendant objected to the admission of the contract. I admitted it because paragraph 4 of the answer says: "On November 25th, 1925, one George B. Bergkamp, who was the president of the defendant, entered into a proposed contract of sale, which is referred to in the complainant's bill of complaint, specific performance of which is sought thereby; and the said Bergkamp also executed the said proposed contract of sale in the name of the defendant upon the express condition and understanding that the said proposed contract of sale would not go into effect until and if it was approved of and confirmed by Franklin S. Kellar."
It seemed to me therefore that the execution of a paper, purporting to be a contract had been admitted in the pleadings, and the only question before me was whether this man as president had the authority to make it. It should be noted that the defendant called as its own witness Mr. Bergkamp and established through him the fact that he was the president of the corporation and in that capacity had signed the agreement, and that the paper in evidence was the agreement.
The defendant further objects because the corporate seal does not appear on the agreement. As we have seen, no by-laws of this corporation were ever adopted and no resolutions were ever passed. How, therefore, could there have been a "common seal?" There is nothing in the evidence to show that one was ever adopted.
In 14 Corp. Jur. 334 § 405, the law is stated to be as follows (section 405):
"At an early day it was considered that as a general rule a corporation could not manifest its intention and therefore could not contract, except by the use of its corporate seal; but this doctrine has long since been abandoned, and the general rule now is that, unless the charter or some other statute provides otherwise, a corporation need not use a corporate seal except where an individual would be required so to do, but may appoint agents and act and make contracts by resolution or writing not under seal or by parol, just as an individual may. Nor is the formal adoption of a particular and common corporate seal, or the use of such seal, if adopted, necessary, even to enable a corporation to transact business requiring the use of a seal. *Page 458 
Even when a corporate seal has been adopted, it is not indispensable that it shall be used; but, on the contrary, since a corporation has the power, not only to adopt a common seal, but also to alter the same at pleasure, any seal other than the common corporate seal, if it meets the requirements of the law as to form and sufficiency, will have the same effect if adopted by the corporation, although only for the particular transaction; and such adoption is ordinarily established by showing authority to execute an instrument under seal on behalf of the corporation and the fact of attaching some seal to the name of the corporation with the intent to seal on its behalf. A fortiori, where a corporation has no common seal it may adopt and use onpro hac vice."
Section 406:
"The prevailing doctrine now is that a mere scroll or rectangle containing the word "seal," or such word alone, placed opposite the name of the corporation on a written instrument executed by it, is a prima facie evidence that it was affixed by proper authority."
Section 407:
"The general rule, however, is that where it is shown or admitted that an instrument was signed by the corporation by its proper officer or by a duly authorized agent, the presumption is that it was duly executed, and this presumption, in the absence of evidence to the contrary, includes the authenticity of the seal used in its executions. And it is also held that the seal of a corporation is prima facie evidence that it was affixed by proper authority."
It should be noted that our Corporation act says (2 Comp.Stat. (1911) p. 1597): "Every corporation shall have power
to make and use a common seal." Therefore, this is not mandatory, but permissive. In the absence of a common seal, the rules, as stated above, apply.
The twenty-second section of the Conveyance act (2 Comp.Stat. (1911) p. 1542), says that an agreement acknowledged, as this one was by an attorney-at-law of this state, shall be received in evidence by any court of this state.
The Conveyance act (2 Comp. Stat. (1911) p. 1541) says as to instruments executed by corporations without seal: "The record of every such deed shall be admissible in evidence as fully and completely for all purposes as if such deed had been completely sealed." *Page 459 
The statute of frauds (2 Comp. Stat. (1911) p. 2612) directs contracts for the sale of lands to be in writing, but does not require a seal. We come therefore to the question of fact as to whether this contract of sale was authorized by the corporation within the meaning of the decisions bearing on such situations.
Mr. Bergkamp, one of the defendant's own witnesses, told a clear and, to me, convincing story of the transaction, and asserted that the directors knew of it and approved it. The stentorian tones and vehement manner of Mr. Blank while delivering his pronouncements from the witness-stand lead me to wonder whether he desired to impress the court by noise instead of veracity. He testified to conversations with Mr. Cyrus Vail, a disinterested witness and a prominent member of the New Jersey bar, tending to show a general agency between complainant and Mr. Vail. Mr. Vail categorically denied that he had ever made these statements and testified that he was employed by Mr. Feder merely to draw the agreement in question and never acted as his general counsel. Mr. Feder corroborated this. I believe Mr. Vail and Mr. Feder. Therefore, I think Mr. Blank's whole testimony is of little value.
It should be remembered that this company never had any formal directors' or stockholders' meetings and never adopted any by-laws. That the sole purpose of the corporation was to buy and sell real estate and that Bergkamp was president, had an office near the property and was held out to the public as having authority to manage it. Mr. Blank and his associates lived in New York.
14A Corp. Jur. 356 § 2217, says:
"His — the president's — powers as agent must come from the organic law of the corporation or from a delegation of authority from it, either directly or through the board of directors formally or directly granted or implied from the habit of doing business; and as in the case of other agents he may acquire larger powers than those ordinarily belonging to him by being held out to the public as possessing them and by being suffered by the directors habitually to exercise such powers in the face of the public."
In Glover v. Lee, 140 Ill. 102; 29 N.E. Rep. 680, the court said: "As a general rule corporations act through their *Page 460 
presidents, and an act done through the president will be presumed to be authorized, unless shown to be otherwise."
In Smith v. Smith, 62 Ill. 493, the court said: "In the absence of legislative enactment or provision made in the by-laws, corporations usually act through their president or those representing him. He being the legal head of the body, when an act pertaining to the business of the company is performed by him, the presumption will be indulged that the act is legally done and is binding upon the body."
In DuBois v. Sheppard, 41 App. Div. 113; 58 N.Y. Supp. 563,
the court held that the president of a real estate company, as such, possessed the power prima facie to execute a conveyance of its property
In First National Bank v. G.V.B. Min. Co.,89 Fed. Rep. 439, the court said: "The authority which the public may presume is lodged with an officer of a corporation depends much upon the nature of the office, and the character and general objects of the corporation. When any officer is given general authority to manage its business, and especially when he is one of its chief officers, his presumed authority is extended to include any act that can be necessary in the conduct of its business, or that can tend to the promotion of its objects."
In National State Bank v. Vigo County National Bank,141 Ind. 352; 50 Am. St. Rep. 330; 40 N.E. Rep. 799, in which the question arose upon the mortgagee's demurrer to a complaint filed by a creditor of the mortgagor corporation to set aside the mortgage as having been executed by the president without authority, it was said: "When a contract is made in the name of a corporation by the president in the usual course of business, which the directors have power to authorize him to make or to ratify after it is made, the presumption is that the contract is binding on the corporation until it is shown that the same was not authorized or ratified."
The case of Chicago Pneumatic Tool Co. v. Munsell, 107 Ill. App. 344,
was an action brought against a corporation for the agreed price of certain mica washers to be used in installing an electric plant in the factory operated by the corporation, furnished upon an order given by its president. *Page 461 
The presumption in favor of the authority of the president was held to support a recovery, the court saying: "The general rule is that a corporation acts through its president, and through him executes its contracts and agreements; and an act pertaining to the business of the corporation, not clearly foreign to the general power of the president done through him, will, in the absence of proof to the contrary, be presumed to have been authorized to be done by the corporate body."
In the case of Murphy v. Cane, 82 N.J. Law 557, the court of errors and appeals, speaking through Chancellor Pitney, said: "When in the course of the business of a corporation, an officer has been allowed in his official capacity to manage its affairs, his authority to represent the corporation may be inferred from the manner in which he has been permitted to manage its business."
In the case of Bennett v. Millville Improvement Co.,67 N.J. Law 320, the court said (at p. 321): "In United States Bank
v. Dandridge, 12 Wheat. 64, Judge Story says: `Persons acting publicly as officers of the corporation are to be presumed rightfully in office; acts done by the corporation, which presupposes the existence of other acts to make them legally operative, are presumptive proofs of the latter. Grants and proceedings beneficial to the corporation are presumed to be accepted and slight acts on their part, which can be reasonably accounted for only on the supposition of such acceptance, are admitted as presumptions of the fact. If officers of the corporation openly exercise a power which presupposes a delegated authority for the purpose, and other corporate acts show that the corporation must have contemplated the legal existence of such authority, the acts of such officers will be deemed rightful and the delegated authority will be presumed.'
"It is laid down in 2 Cook Corp. ¶ 716: `In all cases the president binds the corporation by his act and contracts when he is expressly authorized to so act or contract, or when he has been permitted by the corporation, for some time to act and contract for it. Thus, when the president had been accustomed to act and contract for the company without express *Page 462 
authority, and his acts had always been accepted, his order to a contractor to stop work binds the company. So, also, the company is bound when it ratifies or accepts the contract after it is made, or accepts the benefit of the contract. Having knowingly received the benefit of the contract made and carried out by the president, even without authority, the corporation must perform its part.' Fitzgerald, c., Co. v. Fitzgerald, 137 U.S. 98;McComb v. Barcelona Association, 134 N.Y. 598; Fifth NationalBank v. Navassa Co., 119 N.Y. 256; Martin v. Niagara Co.,122 N.Y. 165; Olcott v. Tioga Railroad Co., 27 N.Y. 546.
"In New York the rule is that a contract which apparently is a corporate contract, being duly signed by the president, is presumed to be a corporate contract, until the want of authority of the president is shown by the corporation. 2 Cook Corp.
¶ 716.
"Where a contract, made in the name of a corporation by its president, is one the corporation has power to authorize its president to make, or to ratify after it has been made, the burden is upon the corporation of showing that it was not authorized or ratified." Patterson v. Robinson, 116 N.Y. 193.
I believe, as a matter of fact, that these New York directors knew of, authorized and approved the making of this contract. Certainly, the defendant has not sustained the burden of proof resting upon it of showing that the contract was not authorized.
I will advise a decree for specific performance. *Page 463