FIFTH NATIONAL BANK OF PROVIDENCE, RHODE ISLAND,. Appellant, *v.* NAVASSA PHOSPHATE COMPANY, Respondent.

In an action upon certain promissory notes made payable to defendant, a domestic corporation, and indorsed by L., as its president, it appeared that the defendant had its main office in the city of New York, and while a portion of its business was transacted and most of its purchases and sales were made in other states and countries its principal business operations were carried on in that city, and the annual meetings of its directors were there held. L. was its president and treasurer, the general manager of all its business affairs in said city, and the only officer in attendance at its office there; he paid the current accounts of the company, indorsed checks made payable to its order. The discount of business paper and the use of its money for its purposes, and the account of the same on its cash books were daily and permitted transactions. Defendant had no cash capital, and its working capital was borrowed on the credit of the company; this was done principally by L., and mainly by the use of paper indorsed by him in its name; the evidence tended to show that this was with the knowledge and acquiescence of the directors. *Held,* that the evidence required the submission of the question of the authority of L. to bind defendant by indorsements, to the jury; and that a dismissal of the complaint on trial was error.

(Argued January 17, 1890; decided February 25, 1890.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made June 28, 1889, which affirmed a judgment in favor of defendant, entered upon an order dismissing the complaint on trial at circuit.

This was an action upon two promissory notes payable to the defendant, which were indorsed by one Walter E. Lawton, as its president, to the firm of Lawton Brothers, who before their maturity transferred them to plaintiff.

The material facts are stated in the opinion.

*Abraham Kling* for appellant. It is a settled rule of law that if the indorsement of the notes of a corporation by one of its officers is within the scope of his authority, actual or

apparent, the corporation is charged with liability without reference to the question of authority in fact. (*Bk. of Attica* v. *P. & T. Co.*, 1 N. Y. Supp. 483 ; *Bank* v. *Aymar*, 3 Hill, 263; *F. & M. Bank* v. *Bank*, 16 N. Y. 125 ; *Bank* v. *Bank*, 14 id. 623 ; *Cooke* v. *Bank*, 52 id. 96 ; *Bank* v. *N. Y., L. E. & W. R. R. Co.*, 106 id. 195 ; *Olcott* v. *T. R. R. Co.*, 27 id. 560 ; *N. Y. & N. H. R. R. Co.* v. *Schuyler*, 34 id. 30 ; *Bank* v. *Clements*, 6 Bosw. 166 ; 31 N. Y. 33.) It was error for the court to hold that the plaintiff could not recover as it failed to prove it had knowledge of the apparent authority of Lawton to make the indorsement on the notes in suit when it purchased the same. (*Bank* v. *Clements*, 31 N. Y. 33 ; *N. Y. & N. H. R. R. Co.* v. *Schuyler*, 34 id. 30 ; *Bank* v. *N. Y., L. E. & W. R. R. Co.*, 106 N. Y. 195 ; *Holden* v. *Bank*, 72 id. 286 ; 4 Paige, 127.) The defendant cannot set up its by-laws, never published to the world and disregarded by itself, as controverting the authority conferred upon Lawton to indorse these notes. (*Marine Bk.* v. *Butler*, 5 N. Y. Supp. 291 ; *Martin* v. *Niagara*, 44 Hun, 131, 132 ; *Martin* v. *Webb*, 110 U. S. 7.) The Delta Azotin Company passed a good title to the note in suit. (Code Civ. Pro. § 1776 ; *Conn. Bk.* v. *Smith*, 9 Abb. 168 ; *Loaners' Bk.* v. *Jacoby*, 10 Hun, 143 ; *East River Bk.* v. *Rogers*, 7 Bosw. 493 ; Laws of 1860, chap. 269 ; *Pusey* v. *N. J. R. R. Co.*, 14 Abb. [N. S.] 441 ; *Com. Bk.* v. *Pfeiffer*, 108 N. Y. 242.)

*Eugene L. Richards* for respondent. Plaintiff failed to show itself a *bona fide* holder, because it failed to prove that it had knowledge of the apparent authority of Lawton to make the indorsements in suit. (*S. N. Bk.* v. *P., etc., Mfg. Co.*, 18 N. Y. S. R. 954; *Dabney* v. *Stevens*, 40 How. Pr. 341; 46 N. Y. 681; *Queen* v. *S. A. R. R. Co.*, 3 J. & S. 154; *De Bost* v. *P. Co.*, 35 Hun, 386–388; *Risley* v. *I. B. & W. R. R. Co.*, 1 id. 204, 205 ; *Fawcett* v. *N. H. O. Co.*, 47 Conn. 228; *F. N. Bk.* v. *O. Bank*, 60 N. Y. 278 ; Taylor on Corp. §§ 200, 205, 206 ; *Nat. Bk.* v. *Globe Works*, 101 Mass. 57 ; *Maas* v. *M. K. & T. R. Co.*, 83 N. Y. 233.) The alleged

previous indorsements by Lawton were not proven to be similar to the ones in suit, and were not, therefore, proof of any implied authority upon which plaintiff can recover. (*Dabney* v. *Stevens*, 40 How. Pr. 345, 347, 351; *P. Bank* v. *S. A. Church*, 109 N. Y. 512, 525; *Knight* v. *Lamb*, 4 E. D. Smith, 381, 382.) The alleged previous indorsements by Lawton were not proven to have been ratified by or even known to defendant, and are, therefore, no basis of any implied authority. (*P. Bank* v. *S. A. Church*, 109 N. Y. 512, 525; *Dabney* v. *Stevens*, 40 How. Pr. 341; *Blen* v. *Bear River Co.*, 20 Cal. 602; *Cumberland Co.* v. *Sherman*, 20 Md. 117; *Lawrence* v. *Gebhard*, 41 Barb. 575; *Whitewell* v. *Warner*, 20 Vt. 425; *Fawcett* v. *Organ Co.*, 47 Conn. 228; *Knight* v. *Lamb*, 4 E. D. Smith, 381, 382.) The mere proof of Lawton's hand-writing and official connection with defendant was not of itself proof either of express or implied authority, and the complaint was properly dismissed. (*P. Bank* v. *S. A. Church*, 209 N. Y. 512; *Adriance* v. *Roome*, 52 Barb. 399; *Dabney* v. *Stevens*, 40 How. Pr. 341; 46 N. Y. 681; *Marine Bank* v. *Clements*, 3 Bosw. 600; *Risley* v. *Railroad Co.*, 1 Hun, 204; *Queen* v. *S. A. R. R. Co.*, 3 J. & S. 154; *Jackson* v. *Campbell*, 5 Wend. 572; *Titus* v. *C., etc., R. R. Co.*, 37 N. J. L. 98, 102; *Fulton Bk.* v. *Canal Co.*, 4 Paige, 127, 134; *Blen* v. *B. R. Co.*, 20 Cal. 602; *Benedict* v. *Lansing*, 5 Denio, 283; *Central Bk.* v. *Empire Co.*, 26 Barb. 33; *Lawrence* v. *Gebhard*, 41 id. 575; Taylor on Corp. § 193; *Whitewell* v. *Warner*, 20 Vt. 425.) This is not a case of secret instructions to an agent. (*Rathbun* v. *Snow*, 22 N. Y. S. R. 227; · *Westervelt* v. *Radde*, 7 Daly, 326.)

Finch, J. We think the question of the authority of Lawton to bind the defendant company by indorsement was one of fact which should have been submitted to the jury, and that the trial court erred in deciding it as a question of law. In other words our conclusion is that the record contains some evidence of the existence of such authority, and enough to require the judgment of a jury upon it.

Lawton was president and treasurer of the Phosphate Company and the general manager of all its business affairs in the city of New York. While it had an office in Baltimore, yet at the one in New York the buying and selling of phosphates, the shipment and the discharge of cargoes, the annual meetings of the directors, the record of transfers of stock, the discount of business paper, the use of the money of the corporation for its purposes, and the account of the same in its cash-book were daily and permitted transactions. This concentration of business at the New York office seems not to have been accidental or unanticipated, for the articles of association show that the company was incorporated under the laws of this state and that the principal part of the business was to be transacted in the city of New York while a "part of the business" was to . be done in the island of Navassa in the Carribbean sea and also in the states of Massachusetts, Maryland, New Jersey and Pennsylvania. At this principal business office in New York the only official of the company in attendance and conducting its affairs was Lawton, the president. One other director only was a resident of this state, but the whole burden and responsibility was thrown upon and borne by the president at the office in New York. The evidence shows that he chartered vessels for the shipment of phosphates from the island, that he attended to the insurance of the cargoes, that he paid the current accounts of the company, and indorsed checks which were payable to the company's order. He was not only president but treasurer, and was consciously invested by the company with the broad general power inseparable from the position in which it placed him as the sole manager of its affairs at its principal place of business. It is true that the sales of phosphates actually delivered in New York were small in comparison with the bulk of the company's business, but they sold to some extent on foreign account, the shipments for which were direct from the island, the financial management appearing upon the books in New York, and it does not follow from the proof that the great bulk of the business was not done in that city and by the president.

The company had no cash capital.   Its articles of association disclose that fact and that all its shares issued were to be issued for property purchased.   Its annual reports show the same thing. Where then was the money to come from with which to pay for the loading and shipment of the phosphates, the labor employed in the work, the premiums for insurances and the charter of vessels?   At least until profits were realized and a surplus accumulated over and above dividends paid, the work ing capital was necessarily to be borrowed upon the credit of the company.   No director was ignorant of that fact.   Who, then, was authorized to do the borrowing?   The evidence shows that it was done mainly in New York and by Lawton as president.   For eight or nine years he was continually indorsing paper as agent of the company, procuring discounts, putting the proceeds to the credit of the company in its deposit accounts, and using those proceeds as far at least as necessary in its business.   Were the directors of the company ignorant of that fact?   There is no proof that they ever borrowed a dollar to put or keep the enterprise in motion, except in one instance to which I shall refer, and must have known that Lawton borrowed or furnished the necessary means.   Two discounts at least which went to the benefit of the company were pointed out upon its cash-book, kept in New York, and all of them were said to appear upon the stubs of the check. book.   At the annual meeting held in New York each year Lawton made a report to the directors and laid the books before them.   They looked them over, not critically, perhaps, but to some extent, and spread upon them was the truth of what Lawton was doing, and they "took his word for every- thing."

But an occasion came when direct information was given, unless a very improbable presumption furnishes an answer. The witness, Kirkland, who was employed in Lawton's office, went to Baltimore with notes drawn by Lawton Bros. for $20,000.   He there met Dunan, who was secretary and com- mercial agent of the company, and John C. Grafflin, who was vice-president and a director.   Neither of these persons had

any authority conferred by the by laws to indorse the paper of the company, or bind it in any manner. And yet upon the representation of Kirkland that a stringent money market in New York made it impossible for Lawton to procure money there and that he needed it promptly, Dunan indorsed the notes in the name of the company and Grafflin procured their discount and the proceeds were remitted to Lawton. It is difficult to believe that Grafflin and Dunan were lending the credit of the company to Lawton as an individual and to enable him to meet his personal obligations. That implies an utter violation of duty on their part and so gross as to be improbable, though not impossible. It is a more reasonable supposition that they knew the paper which Lawton desired to meet was that upon which the Navassa Company had been made liable by his indorsement, and so that they had some justification for the indorsement and discount which they made and procured. The plaintiff offered to prove that such indorsement was for the benefit of Lawton as treasurer, but the question was excluded.

While the by-laws of the Navassa Company place a restriction upon the action of its treasurer, they impose none upon that of the president, and it was competent for the company to authorize him to bind it by indorsement. That he undertook to do so upon large amounts of paper, and continued the practice for eight or nine years; that by that process he furnished the working capital of the company so far as it appears to have had any; that annually he put the books and accounts before the directors, and that some of them were present when the indorsements were made, are facts which were proved on the part of the plaintiff. The real difficulty which beset it, and which produced its defeat in the courts below was in establishing that the directors knew that he was creating obligations against the company, and gave him authority by acquiescing in its exercise. But the circumstantial evidence, although by no means conclusive, tends to establish that knowledge. The directors knew that the business of the company was being carried on at New York by Lawton; that in

the absence of cash capital it must have been done with borrowed money; and, therefore, that Lawton was creating obligations against the company which it would be called upon to reimburse. They knew, too, that no one of them had given a written consent to him as treasurer to create obligations, and so they must have understood that to a greater or less extent he was borrowing money on the credit of the company, either acting as treasurer without the written assent or acting as president without a specific authority expressly conferred. To either process they assented by silent acquiescence, and while ignorant of details, it may well be urged that they were not ignorant of the material and fundamental fact. And this element of the situation is so far supplemented by the facts that the cash-books and check-books were put before them at the annual meeting; that one of the directors did each year examine the check-book of the Chemical Bank, which showed large discounts; that some of the paper was indorsed by Lawton in the presence of the directors, as to raise a serious question of fact. It is true that some of this proof was contradicted, and much of it in some directions justly criticized, but that does not help us to disregard it entirely. If such authority was conferred, it will protect the plaintiff bank on that ground, and without proof on its part that its officers knew in advance of the exercise of such authority and its ratification. As to the plaintiff it becomes an actual authority. The question, therefore, must be submitted to a jury, and when that is done nothing which we have said about the facts in the performance of our duty must prejudice or control their performance of their own.

The judgment should be reversed and a new trial granted, costs to abide the event.

All concur.

Judgment reversed.