## DAVIES *v.* NEW YORK CONCERT CO., Limited.

*(Supreme Court, General Term, First Department.* February 11, 1891.)

1. APPEAL—REVIEW—QUESTIONS OF FACT.

On the trial each party requested the direction of a verdict in his own favor. The court denied the request of defendant, directed a verdict for plaintiff, and ordered defendant's exceptions to both rulings to be heard at the general term. *Held* that, on the hearing of the exceptions, only questions of law could be considered, and questions of fact, on which there was a conflict of evidence, were not before the court.

2. INSOLVENCY—ACTION BY RECEIVER—SCHEDULE OF ASSETS.

Bonds issued by a corporation, and sold by it to a firm, which paid for them at par, were afterwards, with the consent of the firm, applied by the corporation to the payment of a note made by it. *Held,* in an action by a receiver of the firm against the corporation to recover for the proceeds of the bonds so applied, that the court was justified in holding that the firm was the owner of the bonds, and that the receiver could maintain the action, although the bonds were not mentioned in the schedule of assets of the firm filed by him.

3. CORPORATION—CONTRACTS OF OFFICERS—AUTHORITY.

Bonds of a corporation were purchased by a firm, and two members thereof—F. and W.—became directors of the corporation, and W. became its treasurer, and, on his resignation, D., an employe of W., became treasurer. The management of the corporation's financial affairs was intrusted by its directors wholly to F., W., and D. By agreement between them, and to make good overdrafts on its bank-account, D. made a note in its name, and W. gave him certain of the bonds of the corporation purchased by his firm, to pledge as collateral, and D. delivered the note and bonds to the bank to secure a loan to the corporation. Thereafter, both the firm and the bank being insolvent, and receivers of their property having been appointed, the bonds were sold by the receiver of the bank, and the proceeds applied to pay the note, with the knowledge of the directors of the corporation, and no question was raised by them as to the authority of D. to sign the note and procure the loan, until an action was brought by the receiver of the firm to recover from the corporation the amount of the proceeds of the bonds applied to pay the note. *Held,* that the corporation could not dispute the authority of D. to sign the note, or to borrow and pledge the bonds as security for the loan thereon.

4. SAME.

Neither could it set up that the payment of the note out of the proceeds of the bond was a payment by a volunteer, no such pretense having been made previously.

Exceptions from circuit court, New York county.

Action by Julien T. Davies, as receiver of the firm of Grant & Ward, against the New York Concert Company, Limited. At the trial, the court directed a verdict for plaintiff, and ordered defendant's exceptions to be heard in the first instance at the general term. For former report, see 4 N. Y. Supp. 373.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*William H. Arnoux* and *David Leventritt,* for defendant. *Hornblower & Byrne,* (*William B. Hornblower* and *Howard A. Taylor,* of counsel,) for plaintiff.

VAN BRUNT, P. J. Upon the trial of this case both the plaintiff and defendant requested the court to direct a verdict in their respective favor. The court refused to direct a verdict in favor of the defendant, to which exception was taken, and directed a verdict in favor of the plaintiff, which was also excepted to. Under this condition of the record there is no question of fact before the court, and only questions of law are to be considered, among which is the question as to whether there was any evidence before the court tending to establish the facts necessary to support the verdict as directed. The plaintiff is the receiver of the insolvent firm of Grant & Ward, and as the successor to the rights of that firm has been authorized to bring this action. Among others who were partners in that concern were James D. Fish, president of the Marine Bank, and Ferdinand Ward, who were also directors in the defendant company. The defendant is a domestic corporation, own-

ers of the building known as the "Casino," in which it conducts the business of theatrical and operatic performances. In March, 1883, the defendant issued and sold to Grant & Ward the whole of a series of coupon bonds secured by mortgage upon its property. These bonds were paid for at par, and it was at the time of this transaction that Fish and Ward became directors, and Ward the treasurer, of the defendant. All the books relating to the finances of the corporation were kept at the office of Grant & Ward, and the financial part of the company's affairs was transacted by Fish and Ward, and Mr. Doty, who was an employe of Ward, and who, in July, 1883, became treasurer of the defendant, in the place of Ward, who resigned. The bank-account of the defendant was kept at the Marine National Bank in New York city, and in July and August of 1883 it was overdrawn, from time to time, to various extents. It having been learned that the bank examiner was to visit the bank, its cashier demanded that the account be made good, but the company had no money to make the account good, and no securities upon which to obtain a loan. It was thereupon agreed between Fish and Ward and Doty that he, Doty, on behalf of the defendant, should give a note for $15,000, and Ward would furnish as collateral such of the above-mentioned bonds as remained in the office of Grant & Ward. Upon that day Doty drew the note in the name of the company for $15,000, payable on demand, dating the same back, and Ward gave Doty 22 bonds to pledge as collateral to the note, and Doty took the note and bonds to the bank and delivered the same to the cashier, and thereupon entered the amount of the loan in the pass-books of the defendant, bringing the account of the defendant from an overdraft to a slight balance in its favor. The details of this transaction were entered upon the books of the defendant company, the entry upon the check-book being, under the date of August 16th, as follows: "Borrowed from the Marine National Bank on $22,000 New York Concert Co.'s bonds, $15,000." There was some evidence, although slight, that the treasurer reported the fact of this loan at a directors' meeting, but there was no evidence that he ever stated that he had given a note. The first six months' interest on the loan was paid by a check, countersigned by the president, the entry upon the stub of the check-book stating that the check was drawn to pay interest on loan of $15,000 from August 16th to February 15th, six months. Subsequently Grant & Ward and the bank failed, and both went into the hands of receivers. In 1884 the receiver of the bank called for the payment of the loan, and, the loan not being paid, the receiver applied thereafter the coupons of the bonds in payment of the interest due on the loan, and in part payment also of the principal. In 1888 Judge Arnoux came to the receiver of the bank to make some negotiations in regard to the matter of this note and bonds, and wanted to buy the note. The receiver of the bank told him that the note was secured by a collateral of $22,000 of bonds, which he had been notified by the receiver of Grant & Ward belonged to him, and hence he could not sell the note, as the collateral was more than the amount due, and whatever there was over, if the concert company ever paid the bonds, he proposed to apply on the debt of Grant & Ward. Hence he proposed to keep the collateral and pay the note by a sale if it would fetch it. It further appears that the receiver of the bank had applied to the receiver of Grant & Ward for leave to sell this collateral, which the last-named receiver assented to, provided that the bonds should be sold at par and interest, and provided the note for $15,000 should be paid from the proceeds of the sale, and marked and treated as paid. The receiver of the bank and Judge Arnoux had several interviews, and the receiver told him that if he sold to him the collateral he would be obliged to mark the note "Paid," and send it to the company as paid. The judge said he did not care for that, and the result of the negotiations was that the bonds were sold, the note marked "Paid" by the receiver, and the bonds and note delivered to Mr. Ritch, the partner of Judge

Arnoux. It further appears that the defendant subsequently paid these bonds, and also again paid the note to Judge Arnoux. The receiver of Grant & Ward subsequently made a demand upon the defendant for the return of the 22 bonds to him, or payment thereof. The defendant refused to accede to the request, and this action was brought to recover to the extent to which the coupons and proceeds of the bonds had been applied to the payment of the note. As above stated, upon these facts the court directed a verdict, to which exception was taken, which exception is now presented for review.

There is evidence of many other facts in connection with this transaction which it has not been deemed necessary to mention, in respect to some of which there is an apparent conflict of evidence, but in the shape in which the questions involved come before this court this conflict of evidence cannot be considered, but it must be resolved in favor of the ruling which has been made by the learned court. It is claimed upon the part of the defendant that the plaintiff cannot recover, because Grant & Ward were not shown to be the owners of the bonds, and because neither Doty, as treasurer of the defendant, nor its president, nor the two combined, had any right to create any indebtedness or borrow any money in the name or on behalf of the defendant from the Marine Bank without the authority of the board of directors, and no such authority was given to them or either of them; that the said note for $15,000, signed and delivered on the 29th of August, and antedated to the 15th of August, was signed without the knowledge or authority of the defendant, and the same was never ratified by said company, and was utterly void as against the company; that Doty had no authority to borrow or pledge said bonds, or either of them, and in fact he did not borrow and pledge same, either individually or as treasurer of said company, but simply delivered the same to the cashier of the bank as clerk of said Ward, and acting under his directions; and that this whole transaction took place without the knowledge or authority of the defendant, and without any subsequent ratification thereof by it. There are various other propositions advanced in opposition to the ruling of the court, but it is not necessary to repeat them at length, because they are substantially involved in those to which attention has already been called.

The claim that Grant & Ward were not the owners of the bonds, and that, therefore, the plaintiff, as receiver, had established no claim in this action, seems to be based upon the proposition that because in the schedules of assets as filed they were not mentioned by the receiver he has proved no title. We think the evidence clearly justified the learned court in holding that Grant & Ward were the owners of the bonds, and their mere omission from the schedules by the receiver in no manner tended to weaken the force of the evidence showing that these bonds came from the assets of Grant & Ward to the hands of the defendant to be pledged as collateral to the note. It seems to us further that the evidence in this case not only justified, but compelled, the finding that Doty in all his transactions in reference to this loan of $15,000 acted clearly within the scope of his authority. It seems to us that the fact that he had the authority to make this note is established beyond question, because prior to the commencement of this suit such authority never has been questioned. In fact his authority seems to have been considered so complete by the directors of the defendant that, even after this note had actually been paid, they thought it necessary to pay it over again; for it appears from the evidence without dispute that these bonds were sold for the purpose of paying this note, and that it was the condition under which the receiver of Grant & Ward consented to the sale of the bonds by the receiver of the bank that the proceeds should be applied to the payment of the note, and the note marked "Paid." And it further appears that when the receiver, the holder of the note, received the proceeds of the sale of the bonds, he applied them to the payment of the note, marked it "Paid," and delivered it over to be handed over to the defendant. Of all these negotiations and transactions with the receiver of the bank the officers of the defendant were cognizant, and the authority of Doty in making

this loan or in signing this note was never questioned. Under these circumstances, it seems to us it is too late for the defendant now to say that Doty had no authority to sign this note when they acknowledged it as a doubly valid obligation. It is said they have not ratified the action of Doty, but it seems to us they have ratified it, not only once, but twice, in the most deliberate and formal way, having provided on two occasions the means for its payment. But it is said that, the note having been paid out of the proceeds of the sale of these bonds, it was a payment of the obligation of the defendant by a volunteer. That position entirely ignores the fact that the evidence justified the finding that Doty, Fish, and Ward were managing the financial affairs of the defendant corporation, and that they were in the habit of borrowing money for it, as appears by the existence of these overdrafts, and there is no pretense but what the money resulting from these overdrafts was devoted to the business of the corporation, and that the amount of this loan went to pay the debt of the corporation to a very large amount, and the balance went into the ordinary bank-account of the corporation. How will this corporation be permitted to say, with the proceeds of this note in its pocket, that Doty had no authority to borrow upon the note? And if he had authority to borrow upon the note he had equal authority to make the note secure. He had authority to borrow these bonds for the purpose of pledging them as collateral for the note, and this transaction has been ratified by the defendant company. Knowing that these bonds had been borrowed for that purpose, and had been pledged as security for this note, they participated in the transaction by which these bonds were applied to the payment of their debt. There was no pretense or suggestion, then, when their debt was being paid, that some volunteer was paying it. The means is provided by and with the knowledge of these directors for the payment of this note, and not a word is said about a want of authority upon the part of Doty to borrow the bonds and to pledge them as collateral to the note; and this conduct is in entire consonance with the testimony in regard to the financial affairs of this corporation. It appears that the management of its financial affairs was committed to Mr. Ward and Mr. Fish, and that the directors trusted in their judgment, so far as the bank-account was concerned. The president testified that he did not consider it a part of his duty to oversee them, or what was being done in regard to the finances of the company; that he did not know whether the bank-account was overdrawn, nor did he consider it part of his duty to ascertain, because it was entirely under the control of Fish or Ward; the management of the bank-account was entirely under their control. Now, it is well settled that where a board of directors have acquiesced in the assumption upon the part of one of its officers of the exclusive management of the bank business the bank cannot dispute the binding force of the arrangement made by such officer in reference to its bank business. *Martin* v. *Webb*, 110 U. S. 7, 3 Sup. Ct. Rep. 428; *Fifth Nat. Bank* v. *Navassa Phosphate Co.*, 119 N. Y. 256, 23 N. E. Rep. 737. In the case at bar the evidence goes further, and supports the conclusion that the managment of the financial affairs of the defendant was expressly committed to Messrs. Fish and Ward and Doty. A large amount of space in the briefs of the respective counsel is devoted to the discussion of the peculiar relations arising between Grant & Ward and the defendant, resulting from this transaction. It does not seem necessary to enter into this discussion, because the fact appears that Grant & Ward, at the request of the defendant, supplied the means for paying its debt, which now the defendant desires to keep without recognizing the objection to repay that which it virtually borrowed. The amount of the damage which Grant & Ward sustained is the amount of the proceeds of their bonds, which was applied to the payment of this note. This is the amount for which the verdict was directed, and we see no reason for interfering therewith. The exceptions should be overruled, and the plaintiff should have judgment upon the verdict, with costs. All concur.