Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

O. P. Hurd, for appellant.

H. C. & H. B. Harpending, for respondent.

PER CURIAM.     Judgment affirmed, with costs, on the opinion of the county judge.

(108 App. Div. 78.)

FIRST NAT. BANK OF BINGHAMTON v. COMMERCIAL TRAVELLERS' HOME ASS'N OF AMERICA.

(Supreme Court, Appellate Division, Third Department.   October 24, 1905.)

1. CORPORATIONS—TRANSACTIONS WITH PRESIDENT—SECURITY FOR INDEBTEDNESS.
   The president of a corporation may, in the absence of bad faith, take obligations or security from his corporation for an actual indebtedness to himself.

2. SAME—POWERS OF DIRECTORS—DELEGATION OF DUTIES.
   It is only discretionary powers respecting the affairs of a corporation that a board of directors or managers is prohibited from delegating to a subcommittee or an agent.   They may vest the performance of merely ministerial duties in a committee of their own members, or in an individual.
   [Ed. Note.—For cases in point, see vol. 12, Cent. Dig. Corporations, § 1330.]

3. SAME—AUTHORITY OF TREASURER—BORROWING OF MONEY—QUESTION OF FACT.
   A membership corporation was engaged in business.   A number of debts and corporation notes signed in the corporate name by the treasurer were outstanding, and at an annual convention the corporation adopted a resolution instructing the board of managers to raise money or secure the corporation indebtedness in any manner deemed advisable by them.   The treasurer had general charge of the business of the association, and the board of managers knew that he had signed corporation notes, and the notes so signed by him formed a part of the indebtedness referred to in the resolution of the annual convention.   Held, that the question of the treasurer's authority to borrow money for the corporation and give its note therefor was one of fact.

4. SAME—UNAUTHORIZED ACTS OF OFFICERS—RATIFICATION.
   A president of a membership association loaned considerable money to the corporation.   At an annual convention of the corporation, the treasurer included in his report to the finance committee the loan of the president.   The finance committee in its report to the convention, in effect approved the report of the treasurer, stated that the president had loaned money to the association, and recommended that he be given security for the same.   This report was approved in open convention, and the president was given a vote of thanks for the loan, and was elected to the board of managers for his own protection.   Held, that the action of the convention constituted a substantial ratification by the members of the association of a previous act of its treasurer in executing a note to the president for the amount of his loan.

5. SAME.
   Stockholders of a corporation or members of a membership association may ratify and validate previously unauthorized acts and transactions of the corporation or association officers.
   [Ed. Note.—For cases in point, see vol. 12, Cent. Dig. Corporations, § 1707.]

**6. SAME—ESTOPPEL—FAILURE TO DISAFFIRM.**

Where a note given by the treasurer of an association to its president to secure loans made by the latter to the association was brought to the attention of the board of managers at a full meeting of such board, the association, by failing to disaffirm the act of the treasurer within a reasonable time thereafter, estopped itself to deny the validity of the note.

[Ed. Note.—For cases in point, see vol. 12, Cent Dig. Corporations, § 1713.]

Smith, J., dissenting.

Appeal from Trial Term, Broome County.

Action by the First National Bank of Binghamton against the Commercial Travellers' Home Association of America. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Buchanan, Lawyer & Whalen, for appellant.
Jenkins & Page, for respondent.

HOUGHTON, J.   The action is upon a negotiable note for $4,000, dated February 4, 1899, signed by the defendant, by its treasurer, payable to the order of George E. Green, and transferred to the plaintiff by him before maturity.   Green was the president of the defendant at the time of the giving and the negotiating of the note.   The defense is want of consideration and lack of authority in the treasurer to sign. At the close of plaintiff's case the defendant made a motion for dismissal of the complaint.   This being denied, it rested without submitting further proof.   Thereupon the plaintiff made a motion for a direction of verdict in its behalf, which was granted.

We are of the opinion that the verdict was properly directed.   With respect to the consideration, irrespective of any presumption which arises in plaintiff's favor by reason of the negotiability of the instrument and the taking of it without notice, there is no question.   The plaintiff did not see fit to rely wholly on any presumption in its favor, but proved upon the trial that at the time of the giving of the note to Green he had advanced to the defendant moneys and paid its subsisting notes, indorsed by him and upon which he was liable, to the amount of $4,032.61.   At what is termed the "Annual Convention" of the defendant association, held in October, 1898, this indebtedness, consisting of moneys loaned by Green and notes given to various parties, made by the treasurer and indorsed by him, was exhibited to the finance committee and reported by it to the convention as subsisting and existing obligations.   The total debts amounted to from $5,000 to $7,000, incurred largely in the running of a magazine devoted to the interests of the association, in which amount was included the actual and contingent liability to Green; and after discussing the ways and means for meeting the obligations the convention adopted a resolution that:

"The board of managers be instructed by the convention to raise money or secure the indebtedness in any manner that is deemed advisable by them, and for the association, even to the extent of mortgaging the real estate, if necessary."

In the February following, Green having paid the notes indorsed by him, they, with his own advancements, were merged in the note in controversy. The president of a corporation, in the absence of bad faith, has the right to take obligations or security from his corporation for an actual indebtedness to himself. Duncomb v. N. Y., H. & N. R. R. Co., 88 N. Y. 1.

Defendant's board of managers consisted of 15 members, and that body appointed from its number an executive committee of 5, authorized by resolution to transact business in behalf of the board of managers when it was not in session. It was by a majority of this executive committee, at a meeting held at the office of the defendant, that the treasurer testifies he was authorized and directed to execute and deliver the note in question. It is urged that the board of managers could not delegate the authority conferred upon them by the resolution to the executive committee, and hence the treasurer could receive no authority from it to sign the note. Of course, the board of managers could direct the treasurer, in pursuance of the authority conferred upon them by the resolution, to sign a negotiable note and deliver it to Green. Whether this was properly done through the medium of the executive committee, authorized to transact the business of the corporation when the board was not in session, is the only question involved. It is only discretionary powers respecting the affairs of the corporation that a board of directors or board of managers is prohibited from delegating to a subcommittee or an agent. They may vest the performance of merely ministerial duties in a committee of their own members, or in an individual. 10 Cyc. 772.

The defendant was organized under chapter 59, p. 85, of the Laws of 1892. This act was not put in evidence, and the appellant insists that it is a private act, and that this court cannot take judicial notice of its provisions. Whether that be so or not, enough appears in the record to show that the defendant was a membership corporation, without stock, and that it held annual conventions at which the members elected officers, appointed a board of managers, received the report of a finance committee, which examined the treasurer's and secretary's report and accounts and passed upon the same, discussed the affairs of the association, and adopted resolutions, and that in 1898 it had been engaged in the business of publishing a magazine devoted to the plan of building a home for indigent commercial travelers. If the defendant can be deemed a business corporation, there can be no question but its board of managers would have power to appoint an executive committee of their own number to transact the business of the corporation during the interval between meetings of the board, and that this business might involve the giving of negotiable notes for legitimate indebtedness incurred. Sheridan E. L. Co. v. C. N. Bank, 127 N. Y. 522, 28 N. E. 467.

The record further shows that in this business of magazine publishing, at the time of the holding of the convention in 1898, notes given for expenditures therein were outstanding, and were signed in the corporate name by the same treasurer who signed the note in controversy to the knowledge of the board of managers, and that these notes formed

a part of the indebtedness referred to in the resolution, and that the treasurer had general charge of the business of the defendant. Under such state of facts the question of the treasurer's authority even to borrow money for the corporation and give its note therefor would be one of fact. F. N. Bank v. N. P. Co., 119 N. Y. 256, 23 N. E. 737.

In addition, the record discloses substantial ratification by the members of the association of the act of its treasurer. At the annual convention held in October, 1899, the secretary and treasurer (both offices being held by one person) reported to the duly appointed finance committee of the convention, and in such report included the Green loan. The report of the finance committee to the convention stated that it had examined all the books, papers, and vouchers pertaining to the association, and found them to agree and correspond with the report of the secretary, and, further, that "they had found that the president [Green] had advanced to the association sums amounting to $4,032.61," and recommended that he be given ample security for the same. This report was approved in open convention. In addition, the generosity of Mr. Green in thus loaning money was commented upon, and, as he was about retiring as president, it was insisted, for his own protection, that he be placed upon the board of managers, and a vote to that effect was unanimously carried, as well as a vote of thanks for the loan of the money and the efforts which he had made in behalf of the association. The only criticism which can be made of this as a complete ratification is that the loan made by Green was mentioned, instead of the giving of the note to him. Stockholders of a corporation may subsequently ratify the acts and validate the originally unauthorized transaction of its officers. Kent v. Quicksilver Mining Co., 78 N. Y. 159; Martin v. N. F. P. Mfg. Co., 122 N. Y. 165, 172, 25 N. E. 303. If this be so of the stockholders of an ordinary stock corporation, it is doubly true of a membership association.

In addition, Green testified that it was his recollection that the giving of the note was brought before a full meeting of the board of managers after its execution. It is fair to assume from the testimony that this occurred at no great length of time after the note was given; and, if so, the defendant would be estopped, for the rule that where a principal has not disaffirmed an unauthorized act of his agent within a reasonable time after it came to his knowledge, etc., applies to corporate bodies, as well as to individuals. Sheldon H. B. Co. v. Eickemeyer H. B. M. Co., 90 N. Y. 607. The defendant had had Green's money. It had obtained credit by his indorsements of its notes. Those notes, as well as the money advanced by him, were recognized as subsisting obligations against the corporation. Payment of the money loaned and of the notes outstanding could have been enforced. The giving of the note to him upon his paying the outstanding obligations upon which he was liable as indorser cast no additional burden upon the corporation and took away none of its property. The board of managers had been authorized to even execute a mortgage upon the defendant's property to secure the same indebtedness. Instead of doing that, a man was found

willing to take a simple promissory note, which it would appear in fairness the defendant should pay.

On all the facts proved we think the direction of the verdict was justified, and that the judgment should be affirmed, with costs. All concur, except Smith, J., who dissents.