(85 Misc. Rep. 621)

FENSTERER et al. v. PRESSURE LIGHTING CO.

(City Court of New York, Trial Term.  May, 1914.)

1. BILLS AND NOTES (§ 340*)—PURCHASE OF CHECK—INDORSEMENT—NOTICE.

Where a company accepted from the vice president and general manager of a corporation a check drawn by the city of New York to the order of the corporation and indorsed in blank by the vice president, who employed the corporation's rubber stamp to affix the corporate seal, and where it gave the corporation credit for a sum owing to it and paid the vice president the balance in cash, the rights acquired by it by purchase of the check were subject to any defects arising from facts which a reasonable inquiry would have disclosed.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 825–828, 842–848; Dec. Dig. § 340.*]

2. BILLS AND NOTES (§ 340*)—CHECKS—BONA FIDE HOLDER—CORPORATIONS.

Where a company accepted a check payable to a corporation and indorsed in blank by the vice president and general manager of the corporation, giving the corporation credit for the amount of a debt which the vice president had incurred pursuant to his ostensible authority, it was a bona fide holder of the check, at least to the amount so credited.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 825–828, 842–848; Dec. Dig. § 340.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. BILLS AND NOTES (§ 346*)—INDORSEMENT—NOTICE OF DEFECTS.

That the manner of endorsement of a check placed the transferee thereof on inquiry, did not charge it with notice of defects which a reasonable inquiry would not have disclosed.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 869; Dec. Dig. § 346.*]

4. CORPORATIONS (§ 414*)—AUTHORITY OF VICE PRESIDENT—POWER TO BORROW MONEY AND NEGOTIATE NOTES.

Where, on the organization of a corporation, a person was elected director, vice president and general manager and given the active management of the company's business, he had power to borrow money for the corporate account, and to negotiate commercial papers of the company to pay company obligations or to procure funds for company purposes.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1640–1646; Dec. Dig. § 414.*]

5. CORPORATIONS (§ 294*)—OFFICERS—REMOVAL—POWER OF EXECUTIVE·COMMITTEE.

The directors of a corporation organized under the General Corporation Law of Delaware (Act Gen. Assem. March 10, 1899 [22 Del. Laws, c. 394]), which in section 9 provides that the board of directors may designate two or more of their number to constitute an executive committee to exercise the powers of the board of directors in the management of the business of the company, created such an executive committee by resolution and at the same meeting voted to continue in office as vice president and general manager for one year and until his successor should be duly chosen by the board of directors, the person then holding such position. The by-laws provided that an officer could be removed by vote of a majority of the whole board of directors. Held, that a majority of ·the members of the executive committee had no power to remove such person from the office of vice president and general manager; the power vested in them to manage the business of the company not authorizing them to remove officers.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1263–1266; Dec. Dig. § 294.*]

6. CORPORATIONS (§ 305*)—DELEGATION OF POWERS BY DIRECTORS—CONSTRUCTION OF STATUTE—"MANAGEMENT OF THE·BUSINESS AND AFFAIRS."

As used in the General Corporation Law of Delaware (Act Gen. Assem. March 10, 1899 [22 Del. Laws, c. 394]) § 9, providing that the board of directors may designate two or more of their number as an executive committee which shall have the powers of the board· of directors in the "management of the business and affairs" of the company, the words quoted authorized the delegation of ministerial, current, ordinary, and routine powers, but not the power to inaugurate radical departures from fundamental policies and methods of conducting the business as prescribed by the directorate.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1329–1332; Dec. Dig. § 305.*]

Action by Walter J. Fensterer and others, doing business under the firm name of Fensterer & Ruhe, against the Pressure Lighting Company, interpleaded in the place and stead of the National City Bank of New York. Judgment for plaintiffs.

Frank R. Greene, of New York City, for plaintiffs.
David V. Cahill, of New York City, for defendant.

RANSOM, J. [1] By supplemental pleadings, served subsequently to the entry of an order of interpleader obtained by the National City Bank of New York, the parties ask the court equitably to determine their respective rights in and to a fund of $805.23, now in the hands of the chamberlain of the city of New York. The circumstances of the controversy are, in outline, as follows: On January 10, 1914, the regular course of mail brought to the office of the Pressure Lighting Company a check for $805.23, drawn by the city of New York to the order of that corporation, as payment under a contract which the company had with the city of New York. Later on that same Saturday, Ragland Momand, known to the plaintiffs as vice president, director, general manager, and active business head of the Pressure Lighting Company, brought this check, duly accepted and certified by the bank on which it was drawn, to the plaintiffs' office. He stated to Mr. Ruhe that he needed immediate funds for a business trip on a matter in which the plaintiffs knew the defendant corporation was engaged and from which the plaintiffs expected to benefit through supplying materials which the defendant commonly needed in carrying out its lighting contracts. The plaintiffs had, a short time previously, sold $300 worth of goods to the defendant, and $150 of this amount concededly remained due from the defendant. The plaintiffs had also, from time to time, made loans to the defendant at the instance of Momand, upon his statement that he needed current funds for matters in which the plaintiffs knew the defendant was concerned. These advances totaled $550, and Momand had promised repayment as soon as the company got its money from the city of New York. Momand brought to the plaintiffs the city's check for $805.23, indorsed the same, in blank, "Pressure Lighting Co., R. Momand, Vice President," employing the company's usual rubber stamp to affix the corporate name, and asked the plaintiffs to deduct the $700 due them from the defendant and give him in cash the $105.23 remaining. This the plaintiffs did. Other persons interested in the defendant corporation, but not in possession of the company's offices, learned of the receipt of the check and warned the drawee not to pay to any indorsee of Momand. When the plaintiffs brought suit, the bank interpleaded the defendant payee, and the controversy was heard by the court without a jury.

[2, 3] The circumstances under which the plaintiffs received this check were such as fairly to put them upon inquiry and subject their rights of reimbursement to any equities arising from facts which reasonable inquiry would have disclosed. Ward v. City Trust Co., 192 N. Y. 61, 84 N. E. 585; Niagara Woolen Co. v. Pacific Bank, 141 App. Div. 265, 126 N. Y. Supp. 890; Standard Steam Specialty Co. v. Corn Exchange Bank, 84 Misc. Rep. 445, 146 N. Y. Supp. 181; National Bank of Republic v. Navassa Phosphate Co., 56 Hun, 136, 8 N. Y. Supp. 929; Rochester & C. T. Road Co. v. Paviour, 164 N. Y. 281, 58 N. E. 114, 52 L. R. A. 790. Inasmuch as this is an equitable proceeding to determine the disposition of the fund originally set aside by the city to this defendant's order, and inasmuch as out of this fund the defendant has already been credited with payment of $150, which it conceded it owed plaintiffs and has also been credited with payment

of $550 which Momand borrowed within the scope of at least his ostensible authority and had utilized in ways of which the defendant received the benefit, it may very well be that, in a proceeding such as this, the defendant can have no rights at all respecting at least $700 of these moneys, and that the plaintiffs are entitled to reimbursement from the fund accordingly. However, inasmuch as counsel for the defendant vigorously invokes the authority of the cases above cited and contests Momand's authority to do anything with the check, it is desirable to ascertain just what facts would have been disclosed had the plaintiffs first made that reasonable inquiry which was their duty. The fact that the manner of indorsement put them on inquiry, and that nevertheless they made no inquiry, is inconsequential if the facts which inquiry would have disclosed create no cloud on the authority by which the check came to the plaintiffs' hands. Ward v. City Trust Co., supra.

[4] The facts which would have been disclosed by inquiry are substantially conceded; they present a legal question which is the vital one in the case and, with the one exception hereinafter noted, does not appear to have been passed upon by any court. Upon the organization of the Pressure Lighting Company in 1910, Momand was elected a director and also vice president and general manager. He was given broad powers, and was made the active man in the company's business. Concededly he remained the vice president and general manager in January, 1914, unless he had been lawfully removed from such office by certain action taken by two directors on October 21, 1913; and it cannot seriously be challenged that if, on January 10, 1914, and previously, he was still the vice president and general manager, he was possessed of plenary authority to borrow money for the corporate account and negotiate commercial paper received by the company for the payment of company obligations or the procuring of funds for company purposes. Morawetz Corp., § 509; approved and followed in Quee Drug Co. v. Plaut, 55 App. Div. 87, 67 N. Y. Supp. 10. The express authority granted Momand as vice president and general manager leaves no doubt of this.

[5] I am of the opinion that the attempted or purported removal of Momand from that office was wholly nugatory and ineffectual. Section 9 of the General Corporation Law of the state of Delaware, under which the defendant was organized, provided that:

"The board of directors may * * * designate two or more of their number to constitute an executive committee, who, to the extent provided in the said resolution or in the by-laws of said company, shall have and exercise the powers of the board of directors *in the management of the business* and affairs of the company," etc.

On February 29, 1912, an executive committee composed of Momand and two other directors was created by resolution of the full board of directors, the specification of powers of such executive committee following closely the language of the statute. At the same meeting, the full board of directors voted to continue Momand in office as vice president and general manager for one year from that date and until his successor should be duly chosen *by the board of directors*

and should qualify. The by-laws further provided that *any officer* elected or appointed *by the board of directors* may be removed at any time by the affirmative vote of a *majority of the whole* board of directors. On October 21, 1913, the two members of the executive committee other than Momand purported to pass a resolution removing Momand as vice president and general manager and transferring his powers and duties, but not his office or title, to one Bellman, whose election as treasurer was of at least doubtful validity. That action was illegal and without effect. The vesting in an executive committee of the powers of the full board of directors as to the *"management of the business and affairs"* of the company cannot be construed to empower the executive committee to remove from office statutory officers of the company who have themselves been elected for a prescribed tenure by the full board of directors. Assuming that such a power is one which the statute might authorize to be delegated—and this I doubt—such a delegation may not be inferred from less than a clear expression of the legislative intent and an explicit provision of the by-laws and resolution.

[6] Such an expression as "the powers of the board of directors in the management of the business and affairs of the company" may be held to delegate "ministerial," "current," "ordinary," and "routine" powers, but not power to inaugurate radical reversals of or departures from fundamental policies and methods of conducting the business as prescribed by the directorate. See Commercial Wood & Cement Co. v. Northampton Portland Cement Co., 190 N. Y. 1, 6, 82 N. E. 730, 123 Am. St. Rep. 529; Id., 115 App. Div. 388, 100 N. Y. Supp. 960, involving the very Delaware statute here in question. First National Bank v. Commercial Travelers' Ass'n, 108 App. Div. 78, 95 N. Y. Supp. 454, affirmed 185 N. Y. 575, 78 N. E. 1103; Sheridan Elect. Lt. Co. v. Chatham National Bank, 127 N. Y. 517, 28 N. E. 467; Hoyt v. Thompson's Ex'rs, 19 N. Y. 207; Olcott v. Tioga R. R. Co., 27 N. Y. 546, 84 Am. Dec. 298; Metropolitan T. & T. Co. v. Domestic I. & T. Co., 42 N. J. Eq. 626, 14 Atl. 908.

On January 10, 1914, Momand was in actual, peaceful possession of the offices of the company and was engaged in discharging therein the duties of vice president and general manager. His status there had been but recently fortified by an injunction order granted pendente lite by the Supreme Court in New York county. Mr. Justice Ford had accompanied the granting of that order with an opinion in which he said that:

"The plaintiff (Momand) is as much vice president, general manager and director of the Pressure Lighting Company as he ever was, and will so continue until removed by lawful authority. The action of the executive committee was in no sense legal."

If the other officers, directors, and stockholders of the defendant are unwilling to be bound by what Momand considers the proper discharge of his duties for the defendant, their recourse must be to accomplish his removal within the forms of law rather than to penalize these plaintiffs, who had long dealt with Momand as the sole representative of the defendant known to them, and had received many evidences of the cor-

poration's acquiescence in Momand's representations of his authority. Full inquiry by the plaintiffs before cashing the check would have disclosed authority to borrow and indorse this check; that Momand's authority had, but 10 days before, been explicitly upheld in the Supreme Court of this county, a circumstance more convincing than is commonly disclosed to a prospective indorsee by his precedent inquiries.

After the case was closed, the plaintiffs' counsel, in the course of oral argument, suggested that he might well be given leave to reopen the case, in order to present detailed testimony as to the manner and the items of the expenditure of the $550, and the $105.23 obtained by Momand from the plaintiffs. Defendant's counsel objected, and moreover stated that such further testimony would inevitably hinge upon the same fundamental issue already presented in the case, viz., the extent of Momand's authority to act for the corporation. Inasmuch as it is the unchallenged showing of the present record that all moneys were expended by Momand for what he deemed corporate purposes and defendant's counsel failed to act upon the court's explicit admonition to develop on cross-examination the details of these expenditures if he doubted that this would necessarily be true, were it determined that Momand had authority to act for the corporation in such matters at all, it has seemed unnecessary to grant the plaintiffs' application.

The judgment herein will therefore award to the plaintiffs the entire fund with accrued interest. Counsel may submit findings of fact and conclusions of law which they wish passed upon by the court, and subsequently embody in a decision herein all of the findings and conclusions made at the request of either party. In view of the circumstances of the submission, no costs will be allowed to either party.

Judgment accordingly.