LIDO BUILDING COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 53385.    Promulgated October 30, 1934.

*Spotswood D. Bowers, Esq.*, for the petitioner.
*Frank M. Thompson, Esq.*, for the respondent.

OPINION.

SMITH: This is a proceeding for the redetermination of a deficiency in income tax for 1927 in the amount of $5,465.70. The petition alleges that the respondent erred in the determination of the deficiency—

(a) * * * in ruling and deciding that there was a gain on the sale of lease of $43,937.16.

(b) * * * in ruling and deciding that the matter of the Lee Bros. Inc. lease was a corporate transaction, and in refusing to recognize the assignment of three-fifths of the corporation's right, title and interest in the lease to Robert B. Bowler, which transfer was made for a valuable consideration and with the consent of all the stockholders.

The Caraboa Building Co. entered into an agreement with Lee Brothers, Inc., on March 20, 1925, to purchase the building located at 103 East 125th Street, New York City, for $1,007,500. The Caraboa Building Co. paid $100,000 as a deposit on May 1, 1925. In the agreement the seller agreed to turn over to the buyer, or a corporation to be named by it, the lease on the above building. The petitioner was the corporation named by the Caraboa Building Co. to receive the lease, for which the petitioner paid the Caraboa Building Co. $100,000 on May 1, 1925.

The option to purchase the building expired on May 1, 1926, and the Caraboa Building Co. did not exercise it. Lee Brothers, Inc., brought suit against the Caraboa Building Co. and the petitioner to cancel the lease. Pending the outcome of the litigation the court appointed a receiver to operate the demised premises.

The leasehold acquired at a cost of $100,000 was substantially the only asset held by the petitioner. Its only stockholders were Robert B. Bowler, Charles E. Pettinos, and his wife, Joy C. Pettinos. Bowler owned 20 shares of the stock and Pettinos and his wife each owned 10 shares. They continued its only stockholders during the year 1927. The company had no assets with which to defend the suit which had been brought against it, and it was estimated that the cost of such defense would be between $15,000 and $20,000. Pettinos and his wife were unwilling to advance funds to the petitioner to enable it to carry on the litigation.

Thereupon Bowler offered to finance the litigation on the basis that if successful he should receive three fifths of the net proceeds and petitioner two fifths thereof. This proposition was agreed to by Pettinos and his wife and a resolution was duly passed by the corporation on January 3, 1926, and signed not only by Bowler as secretary, but also by one Miss Tappert and by A. Stewart, who was

a director and represented the Pettinos interests. That resolution read as follows:

Inasmuch as the company has no assets with which to carry on the litigation with Lee Brothers, defending its title to the lease on the Lee Building, and inasmuch as Robert B. Bowler has agreed to make himself responsible for all expenses in connection with the said litigation,

RESOLVED that the Company assign to said Robert B. Bowler, at such a time and in such a manner as he may desire, its right, title and interest to the lease in said Lee Building. The said Robert B. Bowler, agreeing to carry on the litigation at his own expense, and in the event that said litigation is successful for this company, or the settlement of said litigation is made, the said Robert B. Bowler agrees to account to this Company for two-fifths of any of the net proceeds derived either from said litigation by settlement or for the sale of said lease or for two-fifths of the net income derived from said lease during the balance of its term.

Although the resolution contemplated an assignment of the lease to Bowler, no such assignment was ever made. The litigation was conducted in the name of the petitioner corporation. It was decided by the lower court in favor of the petitioner. Thereupon, Lee Brothers, Inc., took an appeal to the appellate division and pending such appeal the case was settled by Lee Brothers, Inc., paying to the petitioner $155,000 in consideration of the surrender of the lease and in full settlement of the case. Of this amount $100,000 was payable to the petitioner in 1927, $25,000 on January 1, 1928, and $30,000 on July 2, 1928. Of the $100,000 received by the petitioner on July 1, 1927, $60,000 was immediately thereafter paid to Bowler, and $33,000, remainder of $93,000 representing 60 percent of the total amount received by the petitioner from Lee Brothers, Inc., was paid to Bowler in 1928, less certain expenses of litigation which, in the first instance, were paid by the petitioner and charged against Bowler's share of the proceeds ($93,000).

Petitioner's income tax return for 1927 showed a net loss of $3,450.51. The respondent added thereto a profit upon the sale of the lease of $43,937.16, resulting in a net income of $40,486.65, on which the deficiency of $5,465.70 has been determined. The profit of $43,937.16 was computed by the respondent as follows:

| | | |
|---|---:|---:|
| Total amount received from litigation | | $155,000.00 |
| Cost | $100,000.00 | |
| Less payment of | 3,000.00 | |
| | | 97,000.00 |
| | | 58,000.00 |
| Less expenses: | | |
| Purchase of Caraboa contract | 3,000.00 | |
| Legal expenses paid | 9,650.00 | |
| Stenographer's, etc | 457.55 | |
| Lido liabilities not yet paid | 955.29 | |
| | | 14,062.84 |
| Net profit | | 43,937.16 |

The issues in this proceeding are not sharply drawn. The deficiency notice upon which the petition is predicated includes as a part thereof the report of the audit made by a revenue agent, from which it appears that he treated as a nullity the agreement between the corporation and Bowler by which the corporation agreed to pay Bowler 60 percent of the proceeds of the litigation less the costs thereof. The revenue agent stated: " The transfer by part of the directors to another director of corporate property is without authority. An income arising therefrom is income to the corporation and not income of the individual director to whom assigned."

The real question in issue appears to be whether the petitioner had any taxable income for the year 1927. Counsel for the petitioner submits that if the $60,000 paid to Bowler by the petitioner in 1927 is a legal deduction from its gross income, the petitioner had no net income for that year.

We are of the opinion that the contract made between the petitioner and Bowler was a valid one. See *Goss & Co.* v. *Goss*, 132 N. Y. S. 76; *First National Bank* v. *Commercial Traveler's Association*, 108 App. Div. 78; affd., 185 N. Y. 575; *H. Remington & Son Pulp & Paper Co.* v. *Caswell*, 126 App. Div. 142. The petitioner was not in the possession of funds with which to carry on the litigation and the stockholders, other than Bowler, were unwilling to advance any funds to the corporation with which to do so. Bowler undertook personally to advance such funds and he made all necessary arrangements with his attorney for doing so.

The petitioner does not make it plain whether it is claiming that the amounts paid to Bowler pursuant to its contract with him constitute additional cost of the lease which was surrendered in 1927, or an ordinary expense of carrying on its operations in 1927. We think it was the former. In *Murphy Oil Co.*, 15 B. T. A. 1195: affirmed upon this point in *Murphy Oil Co.* v. *Burnet*, 55 Fed. (2d) 17, we stated:

\* \* \* We have repeatedly held that the cost of defending title, whether in the form of legal fees or compromise payments, is a capital expenditure representing additional cost of the property. *Lincoln L. McCandless*, 5 B. T. A. 1114; *Gopher Granite Co.*, 5 B. T. A. 1216; *Seletha O. Thompson*, 9 B. T. A. 1342; *Frederick McLean Bugher* [9 B. T. A. 1155], *supra; North American Oil Consolidated*, 12 B. T. A. 68; *Phoenix Development Co.*, 13 B. T. A. 414.

But whether the amount paid to Bowler be regarded as additional cost of the lease or as an ordinary and necessary expense of operation, the result must be the same in the determination of the issue in this proceeding; for the petitioner surrendered whatever rights it had in the lease to Lee Brothers, Inc., in 1927. The cost of the lease to the petitioner was in excess of the $155,000 received on the settle-

ment of the litigation. It is apparent that the petitioner had no profit from the sale thereof.

Reviewed by the Board.

*Judgment of no deficiency will be entered.*