ROCKMORE v. SCHILLING.

In re SCHILLING PRESS, Inc.

No. 9504.

Circuit Court of Appeals, Third Circuit.

Argued Jan. 23, 1948.

Decided March 23, 1948.

Max Rockmore, of New York City (Larkey, Mareiniss & Snyder, Barney Larkey and Max J. Mareiniss, all of Newark, N. J., on the brief), for appellant.

Paul T. Huckin, of Englewood, N. J. (Huckin & Huckin, of Englewood, N. J., on the brief), for appellee.

Before MARIS, GOODRICH, and O'-CONNELL, Circuit Judges.

O'CONNELL, Circuit Judge.

A petition for reorganization of the Schilling Press, Inc. ("the Press") under the provisions of Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq., was filed on August 21, 1942. Plaintiff is the duly-appointed trustee in bankruptcy. Defendant is a director and major stockholder of the Press; in addition, he was president and treasurer until January 3, 1933. Between January, 1933, and early 1942, the Press paid to defendant weekly sums totaling $30,920. In 1938 and again in 1940, the Press transferred to defendant a total of 130 shares of Sales Management, Inc., capital stock. Plaintiff alleges that these payments and transfers were made "without consideration of the full value thereof, and with intent to hinder, delay, cheat and de-

fraud the creditors of the bankrupt," and are therefore forbidden by Section 70, subs. a, e, of the Bankruptcy Act, 11 U.S.C.A. § 110, subs. a, e; Section 15 of the New York Stock Corporation Law, 58 McKinney's Consolidated Laws of New York c. 59, § 15, and Section 273 of the Debtor and Creditor Law of New York, 12 McKinney's Consolidated Laws of New York, c. 12, § 273. Defendant, on the other hand, asserts that the money payments were made in return for commensurate services rendered the Press, and that the stock transfers effectually were for the purpose of liquidating a frozen asset of the Press.

After extensive hearings, the court below found that, as to the weekly payments, defendant had performed valuable services, and that the compensation paid him was neither "exorbitant nor otherwise indicative of a fraudulent intent to effect a preference as against the right of other creditors." In addition, the court found that plaintiff failed to show affirmatively "the existence of any subsisting creditor who was such a creditor when the alleged fraudulent transfers were made and who continues as such at this date, with the single exception of this defendant himself." 1947, 72 F.Supp. 172, 176.[1] These findings will be discussed in inverse order.

Plaintiff urges that he did adduce evidence establishing the existence of a present creditor who was also a creditor at the time of the challenged transfers. At the hearing in the court below, by stipulation of counsel, it was entered in the record that the West Side Savings Bank in 1931 was mortgagee of the premises of the Press; that, by virtue of principal, interest, taxes and water rates being in arrears, the bank foreclosed the mortgage; that the bank, as highest bidder, purchased the premises at a sale pursuant to the decree, on October 27, 1938; that the winning bid was $100,000, while the amount owed the bank was $177,000; and that a contested proceeding

---

[1] About two weeks after plaintiff took the instant appeal, the trial judge also filed findings of fact and conclusions of law which are substantially the same as those expressed in the opinion reported at 72 F.Supp. 172. Since the opinion affords a clear understanding of the basis of the decisions and furnishes the facts necessary for our review, we need not determine what weight, if any, should be accorded the findings and conclusions filed subsequent to the appeal. See Hazeltine Corp. v. General Motors Corp., 3 Cir., 1942, 131 F.2d 34 at page 37.

to obtain a deficiency judgment had apparently been abandoned.[2]

■ Inferentially, at least, the trial judge found adversely to the contention made by plaintiff on this appeal, when the judge pointed out that plaintiff had failed to demonstrate the existence of a subsisting creditor and that defendant was the only creditor who might be in a position to void the alleged fraudulent transfers. 72 F.Supp. at page 176. We are impelled to reach the same conclusion. Since the mortgagee was the purchaser at the foreclosure sale, and since the record contains no evidence on the basis of which it may be stated categorically that the fair value of the premises was less than the debt owed the bank, we are by no means certain that the bank would have been awarded a deficiency judgment had such claim been pressed. Moreover, the record indicates that the bank has not filed a claim in the reorganization proceedings, so that plaintiff does not represent the bank. See In Re Trustees System Discount Co. of Chicago, 7 Cir., 1936, 85 F.2d 467, 471.

■ That question aside, plaintiff has failed to show how any of the creditors he represents could have been, and were, adversely affected by the stock transfers in question. In fact, the evidence affirmatively points to the contrary. The uncontroverted evidence of defendant was that (1) the Press had an excess of assets over liabilities when the petition for reorganization was filed; (2) there was no current market for the Sales Management stock, and fruitless efforts had been made both to sell it and to borrow on it; (3) despite the questionable worth of the stock, defendant credited the Press with its full par value; and (4) between 1938 and 1942, if the weekly payments made to defendant are excluded, defendant actually advanced to the Press (excluding interest which he has never claimed) approximately $1500 more than he withdrew in the form of the stock (at par value), cash, and assigned notes. Under the circumstances, we should find it difficult indeed to hold as a matter of law that the transfers were not bona fide, or without full consideration, or intended to defraud. Rather, there seems to us a lack of equity in plaintiff's position, in that plaintiff seeks to recover (a) on behalf of individuals who became creditors subsequent to the transfers, (b) against a man who actually benefited the debtor, relieving it of a frozen asset in return for an advance of money to it greater than the par value thereof, (c) by asserting the alleged right of a former creditor (the bank) which has not filed a claim and apparently would not share in the proceeds if defendant were compelled to return the stock. See First National Bank v. Commercial Travelers' Home Ass'n, 1905, 108 App.Div. 78, 95 N.Y.S. 454, affirmed 1906, 185 N.Y. 575, 78 N.E. 1103, as well as the cases cited in the opinion of the court below.

■ As to the weekly payments, we need only state that, in view of the testimony of several witnesses to the effect that defendant spent an appreciable amount of time in executive duties such as giving instructions to the Press employees, supervising the work, and interviewing customers, we are satisfied that the record contains ample evidence to support the finding of the court below.

The opinion of the lower court contains a comprehensive discussion of the applicability of Section 70, sub. e of the Bankruptcy Act, Section 15 of the New York Stock Corporation Law, and Section 273 of the Debtor and Creditor Law of New York, to the case sub judice. We agree with the analysis contained therein. Plaintiff argues that Section 70, sub. a of the Bankruptcy Act gives him power to proceed on behalf of the Press, as well as in his capacity as representative of the creditors. Even if this be so, the statutory provision which he invokes requires that the transaction he

---

[2] The foreclosure took place almost 8 years before the instant case was brought to trial. Whatever proceedings there were to obtain a deficiency judgment do not seem to have gone beyond 1939. See Section 1083-a of the Civil Practice Act, Vol. 6A, Gilbert-Bliss, Civil Practice of New York, § 1083-a. It is also noted that there was uncontroverted testimony indicating that the bank later offered to resell the premises to the Press without mentioning any deficiency.

seeks to nullify be in fraud of creditors. As we have already pointed out, plaintiff has failed to show either fraud or any creditor injured by the transfers of which he complains.

Since the record fully supports the disposition of the case by the court below, the judgment will be affirmed.